Chief United States District Judge Robert S. Lasnik

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON,<br>Plaintiff,<br>v.<br>U.S. DEPARTMENT OF JUSTICE,<br>Defendant. | No. C09-0642 RSL<br>**NOTICE OF MOTION AND MOTION FOR AN OPEN AMERICA STAY**<br>**(Note on Motion Calendar for December 11, 2009)** |

Pursuant to 5 U.S.C. § 552(a)(6)(C), defendant United States Department of Justice, through its attorneys, hereby moves this Court a stay of the proceedings to allow the Federal Bureau of Investigation ("FBI") additional time complete its processing of plaintiff's Freedom of Information Act ("FOIA") request. This motion is made and based on the accompanying Memorandum of Points and Authorities and the declaration of David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division, of the FBI.

As explained in the attached declaration, although the FBI is exercising due diligence in processing plaintiff's FOIA request, exceptional circumstances exist which prevent it from completing its search and processing of responsive records. While the FBI has not yet completed

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Rm. 7114
Washington, D.C. 20530
(202) 514-4960

its search, it has identified 25,359 pages of potentially responsive records as well as 192 tape recordings which may contain responsive portions. The FBI must now review these records to determine whether they are in fact responsive and if so, whether they contain information which is exempt from disclosure under 5 U.S.C. § 552(b). Because the FBI is still completing its search, the FBI cannot at this time provide an estimate on when it will be able to complete its final response. Defendant offers to provide the Court with periodic status reports on the FBI's progress in completing its processing of the request. Moreover, rather than waiting until the FBI completes the entire processing, the FBI is willing to produce records as they are processed on a periodic rolling basis with the first production starting on December 15, 2009.

DATED this 24th day of November, 2009.

Respectfully submitted,

TONY WEST
Assistant Attorney General

JENNY A DURKAN
United States Attorney

BRIAN C. KIPNIS
Assistant United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, WA 98101-7970
Telephone: (206) 553-7970
Fax: (206) 553-0116
E-mail: brian.kipnis@usdoj.gov

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/Marcia K. Sowles
MARCIA K. SOWLES
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 7114
Washington, D.C. 20530
Telephone: (202) 514-4960
Fax: (202) 616-8470
E-mail: marcia.sowles@usdoj.gov

Attorneys for Defendant

Notice of Motion and Motion
for an Open America Stay

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Rm. 7114
Washington, D.C. 20530
(202) 514-4960

2

## MEMORANDUM OF POINTS AND AUTHORITITES

## INTRODUCTION

This ligation concerns a Freedom of Information Act ("FOIA") request by plaintiff American Civil Liberties Union of Washington to the Federal Bureau of Investigation ("FBI") for "any record . . . describing the operation and maintenance of the National Crime Information Center ('NCIC') Violent Gang and Terrorist Organization File ('VGTOF')."[1] Although the FBI is exercising due diligence in responding to plaintiff's FOIA request, the FBI will require additional time to complete its processing of the request because the FBI is currently working on other FOIA requests, the limited resources currently available to the FBI for the processing of FOIA requests, and the volume of potentially responsive records. Accordingly, pursuant to 5 U.S.C. § 552(a)(6)(C) and Open America v. Watergate Prosecution Forces, 547 F.2d 605 (D.C. Cir. 1976), defendant requests that the Court stay proceedings until the FBI is able to complete processing of the plaintiff's request.

## BACKGROUND

Plaintiff and two other organizations submitted a FOIA request to the FBI by letter dated December 19, 2008, seeking "any record . . . describing the operation and maintenance" of the VGTOF, including but not limited to the ten categories, many of which had further subparts. Exhibit 1 to Declaration of David M. Hardy ("Hardy Decl"). In the letter, plaintiff agreed "to pay search, duplication, and review fees up to $100.00." Id. If the fees amount to more than $100.00, plaintiff requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and (a)(4)(A)(iii). Id. In the request, plaintiff did not provide any details justifying its request for a fee waiver. Id. Instead, it simply summarily stated that it met the statutory standard. Id.

The FBI's Record/Information Dissemination Section ("RIDS") acknowledged receipt of plaintiff's FOIA request by letter dated January 6, 2009. Exhibit 2 to Hardy Decl. On January 9,

---

[1] The NCIC is a computerized database available to federal, state, and local law enforcement or other criminal justice agencies, 24 hours a day, 365 days a year. See Hearing before Senate Committee on Homeland Security and Government Affairs, 109th Cong., 1st Sess. 69 (June 29, 2005). The VGTOF was added to the NCIC database in 1994 to support law enforcement investigative and informational needs related to violent gangs and terrorism. Id. at 72. See also 64 Fed. Reg. 52343, 52344.(1999) (description of the VGTOF and other files in the NCIC datebase.

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Rm. 7114
Washington, D.C. 20530
(202) 514-4960

2009, RIDS mailed a letter addressed to plaintiff's counsel Michael J. Wishnie. Exhibit 3 to Hardy Decl. In the letter, RIDS advised plaintiff that it had located approximately 2,180 pages potentially responsive to the request and that the estimated duplication costs for the records were $208. Id. Because the costs exceeded what plaintiff had agreed to pay, RIDS asked plaintiff to indicate whether it was interested in discussing the possibility of reducing the scope of the request or whether it was willing to pay additional fees. Id.[2] Because RIDS did not receive a response to its January 9th letter, RIDS did not move forward to complete its search for additional records or review and processing of the 2180 pages described in its letter dated January 9, 2009. Hardy Decl., ¶ 10 n.1.

Plaintiff filed its complaint on May 8, 2009, and served defendant by mailing a copy of the Complaint by certified mail on August 25, 2009. Despite plaintiff's failure to narrow its FOIA request or indicate its willingness to pay any fees above $100.00, the FBI in an effort to resolve the matter (without waiving its defenses or right to payment of fees) renewed its processing of the request. Hardy Decl., ¶ 16.[3] As part of that process, it initiated a further search for other potentially responsive documents. Id.

As a result of the additional search, RIDS identified an additional 23,159 pages of potentially responsive records. Id. ¶ 4. In addition, RIDS located 192 tape recordings of meetings of the Criminal Justice Information Service's Advisory Policy Board, which may contain responsive portions. Id. The search for potentially responsive records is the first step in the process. Once the potentially responsive records are identified, RIDS then needs to review the records to determine whether they are in fact responsive. Id. ¶ 40. RIDS then must conduct a page-by-page, line-by-line review of the responsive documents to determine which, if any of the FOIA exemptions may apply. Id. This includes redaction of the exempt material and notation of the applicable exemption in the margin of each page or preparation of page information sheets when pages are withheld in their entirety. Id. If any of the records contains information from other government agencies or

---

[2] Although the letter was properly addressed and mailed by first-class mail, plaintiff contends that Mr. Wishnie never received the letter. Joint Status Report and Discovery Plan (Dkt. No. 19) at 3.

[3] On November 17, 2009, the FBI denied plaintiff's request for a fee waiver. Exhibit 4 to Hardy Decl., ¶ __.

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Rm. 7114
Washington, D.C. 20530
(202) 514-4960

components of the DOJ, RIDS will be required to consult with those agencies or components for their determinations as to the releasability of the information or refer non-FBI records to those originating agencies or components for processing and direct response to plaintiff. Id. If any of the documents are classified, they must also be reviewed by a Classification Unit which is responsible for complying with the classification/declassification review of FBI records under Executive Order 12958, as amended. Id. See also Id. ¶ 18(c).

Until the FBI completes that search and knows the volume and nature of any additional potentially responsive records, it cannot provide an estimate of when it will be able to complete its final processing. Id. Instead of waiting until the FBI completes the entire processing, the FBI is willing to make interim productions on a periodic rolling basis with the first production to take place by December 15, 2009. Id. The FBI is further willing to provide the Court periodic status reports on the progress of its effort to complete the processing of plaintiff's FOIA request. Id.

## ARGUMENT

### A. Legal Standard for a Stay of Proceedings under 5 U.S.C. § 552(a)(6)(C).

An agency receiving a FOIA request generally must determine whether to comply with the request within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i). If an agency does not respond within 20 days, the FOIA requester "shall be deemed to have exhausted his administrative remedies," id. at § 552(a)(6)(C)(i), and can file suit in federal court. The Court may, however, "allow the agency additional time to complete its review of the records" upon a showing that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." Id. § 552(a)(6)(C)(i). This provision "was designed and inserted specifically as a safety valve for [FOIA]." Open America v. Watergate Special Prosecution Force, 547 F.2d 605, 610 (D.C. Cir. 1976).

As part of the Electronic Freedom of Information Act Amendments of 1996, Pub. L. 104-231, Congress amended 5 U.S.C. § 552(a)(6)(C)(i) by adding the following two subsections:

> (ii) For purposes of this subparagraph [5 U.S.C. § 552(a)(6)(C)], the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.
>
> (iii) Refusal by a person to reasonably modify the scope of a request or arrange an

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Rm. 7114
Washington, D.C. 20530
(202) 514-4960

> alternative time frame for processing the request (or a modified request) under clause (ii) after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

See 5 U.S.C. § 552(a)(6)(C)(ii), (iii).

The leading case construing this provision is Open America v. Watergate Special Prosecution Force, 547 F.2d at 616, in which the Court of Appeals for the D.C. Circuit held that an agency is entitled to additional time to process a FOIA request under § 552(a)(6)(C) when it

> is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests.

Id. (quoting 5 U.S.C. § 552(a)(6)(C)). See also Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 64 (D.C. Cir. 1990) ("Frequently, if the agency is working diligently, but exceptional circumstances have prevented it from responding on time, the court will refrain from ruling on the request itself and allow the agency to complete its determination."). The Ninth Circuit has adopted the holding of Open America. See Exner v. FBI, 542 F.2d 1121, 1123 (9th Cir. 1976); see also Fiduccia v. U.S. Dep't of Justice, 185 F.3d 1035, 1040-41 (9th Cir. 1999).

Besides showing progress in reducing its backlog, agencies can show exceptional circumstances based on the amount of classified material, the size and complexity of other requests being processed by the agency, and number of requests for records by courts or administrative tribunals. Electronic Frontier Foundation v. Dep't of Justice, 517 F. Supp. 2d 111, 117 (D.D.C. 2007) (citing H.R. Rep. No. 104-795, at 24, reprinted in 996 U.S.C.A.N. 3448, 3467. Another "factor in determining whether exceptional circumstances exist" is whether the requester has refused "to reasonably modify the scope of a request or arrange an alternative time frame for processing a request . . . after being given an opportunity to do so by the agency." 5 U.S.C. § 552(a)(6)(C)(iii). In short, "exceptional circumstances" include "any delays encountered in responding to a request as long as the agencies are making good-faith efforts and exercising due diligence in processing requests on a first-in, first out basis." Appleton v. FDA, 254 F. Supp. 2d 6, 8-9 (D.D.C. 2003).

Applying this provision, courts have frequently issued orders extending the time to respond

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Rm. 7114
Washington, D.C. 20530
(202) 514-4960

to FOIA requests, including orders granting stays of several years in length or otherwise permitting agencies several years to process documents. See, e.g., Piper v. U.S. Dep't of Justice, 339 F. Supp. 2d 13, 16 (D.D.C. 2004) (FBI showed need for stay of two years); Williams v. FBI, 2000 WL 1763680, at *3 (D.D.C. 2000) (FBI showed need for stay of two and a half years); Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice, 102 F. Supp. 2d 6, 9 & n.1 (D.D.C. 2000) (FBI showed need for stay of two years); Rabin v. U.S. Dep't of State, 980 F. Supp. 116, 123-24 (E.D.N.Y. 1997) (State Department showed need for stay of three years); Fox v. U.S. Dep't of Justice, 1994 WL 923072, at *2 (C.D. Cal. 1994) (FBI showed need for stay of five years).

**B. The FBI Satisfies the Legal Standard for a Stay under 5 U.S.C. § 552(a)(6)(C).**

This Court should grant an Open America stay in this case because despite the FBI's reasonable efforts to reduce its backlog and due diligence in processing plaintiff's FOIA request, exceptional circumstances exist which require the FBI to have additional time to complete its processing of the request.

**1. The FBI Has Made Reasonable Progress is Reducing its Backlog of Pending Requests.**

The FBI has taken various steps to reduce its backlog and has made reasonable progress. Hardy Decl., ¶¶ 21-27. During the time its backlog continued to grow, the FBI repeatedly sought additional funding for the creation of new FOIA positions. Id. ¶ 22. For example, Congress appropriated funds in the 1997 fiscal year budget providing for 129 additional employees, and in the 1998 fiscal year budget providing for 239 additional employees. Id. In 2002, RIDS moved to paperless processing through its FOIA/Privacy Act Document Processing System ("FDPS"). Id. The FDPS allows the user to scan FBI files, documents, and correspondence, and enables the user to process pages electronically rather than manually. Id. RIDS is now using this system to process virtually all of its FOIA/Privacy Act requests. Id. The new process required the FBI to redistribute some of its FOIPA personnel to other sections within the Record Management Division in order to support the scanning and archival services necessary for automated processing. Id. Despite an additional reduction of RIDS personnel following September 11, 2001, the new efficiencies stemming from FDPS allowed the FBI to make great strides in reducing its FOIA/Privacy Act backlog. Id. For

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Rm. 7114
Washington, D.C. 20530
(202) 514-4960

example, the backlog of requests in RIDS in various stages of processing between December 31, 1996 and December 31, 2006, dropped from 16,244 to 1,672, resulting in a reduction of 14,572 requests. Id. The median processing time for a pending request dropped from 1,160 days on December 31, 1996, to 156 days on December 31, 2006. Id.

In addition, the FBI has taken other steps to aid in the streamlining and reduction of the FOIA/Privacy Act backlog, including, in particular, the use of direct on-line computer searches to locate responsive records, the use of forms which eliminate delays associated with word processing, the formation of specific teams to target backlog issues. Id. ¶ 26. The FBI is currently taking two additional steps to update its technology and facilities by developing the electronic investigative case file (the Sentinel Project), and establishing an FBI Central Records Complex in Frederick, Virginia. Id. ¶ 27. The FBI expects these initiatives, after they are fully implemented, to reduce processing times by 40 percent. Id.

**2. The FBI Currently Faces Exceptional Circumstances in Processing FOIA Requests.**

Despite the steps taken to reduce the backlog and the processing time for FOIA requests, three significant factors currently impact the FBI's ability to process requests: (1) the physical relocation of the Section's personnel and resources from FBIHQ to the interim facility in Frederick County, Virginia, which has had a significant impact on the section; (2) an increase in the number and complexity of FOIA requests received, and (3) numerous competing litigation deadlines. Hardy Decl., ¶¶ 28-38.

RIDS began relocation of its operations from FBIHQ to Winchester, Virginia, in February 2006 by establishing an advance team to prepare for the eventual relocation of RIDS in incremental stages. Id. ¶ 29. Beginning in the summer of 2006, RIDS began relocating its functions to the interim facility. Id. This transition continued until October of 2008, when all units completed their relocation to Frederick County, Virginia. Id. As a direct result of this relocation, numerous seasoned RIDS employees chose to retire or find other employment rather than relocate to Winchester. Id. Only 76 out of 211 employees who had worked at FBIHQ now remain within the section. Id. Over 60 percent of the section has less than five years experience. Id. As a result of the FBI's aggressive and intensive

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Rm. 7114
Washington, D.C. 20530
(202) 514-4960

recruitment and hiring effort in the Frederick County, Virginia area, RIDS has been able to bring on-board 161 new employees, 54 of whom have less than one year of experience with FOIA. Id.

The new RIDS employees who have less than one year of experience are in various stages of professional development, but none are yet operating as experienced employees. Id. ¶ 30. It takes an average of three years to adequately train a new employee in the FOIA/Privacy Act process to be able to work independently in a productive, efficient, and effective manner. Id. Accordingly, RIDS has only a limited number of experienced employees processing FOIA/Privacy Act requests at this time. Id. As the court recognized in Electronic Frontier Foundation v. Dep't of Justice, 517 F. Supp. 2d at 118-119, these staffing difficulties constitute exceptional circumstances justifying granting the FBI additional time to complete its processing of a FOIA request.

Simultaneously with this reduction in personnel, RIDS has experienced an increase in its workload in at least two ways. First, in recent years, the FBI has seen a marked increase in the number and complexity of FOIA requests that it receives. Hardy Decl., ¶ 37. Over the past seven years, the FBI has received, on average, 12,516 FOIA/Privacy Act requests per year. Id. In FY 2009, the FBI received a total of 13,511 FOIA/Privacy Act requests. Id. There are approximately 1,144,907 pages of responsive documents currently being processed by the FOIPA Disclosure Units and an additional 796,867 pages of responsive documents in the "perfected" backlog awaiting assignment to a FOIPA Disclosure Unit for processing. Id.[4] Currently, the median processing days for pending requests is 131 days for "small queue" requests, 215 days for "medium queue" requests, and 347 days for "large queue" requests. Id.[5]

The backlog of request is exacerbated because RIDS has also been working with the staff at

[4] In an effort to respond to this increase, in September 2009, the FBI converted 33 employees at two operational service centers to perform FOIA redactions reviews. Id. ¶ 25. In addition, in October 2009, the FBI hired 30 contractor employees to perform Work Processing Unit functions, thereby freeing additional FBI Legal Administrative Specialists ("LAS") to perform FOIA review and processing work. Id. Both contractors and FBI employees are currently undergoing training. Id.

[5] To ensure fairness to all requesters, the FBI uses a three-queue system as a way to fairly assign and process request on a "first-in, first-out" basis. Id. ¶ 18(b)(ii). The placement of a request in one of the three queues depends on the total amount of material responsive to that request – 500 pages or less ("small queue"), 501-2,500 pages ("medium queue') and more than 2,500 ("large queue"). Id.

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Rm. 7114
Washington, D.C. 20530
(202) 514-4960

DOJ's Office of Information Policy in reducing its backlog of pending administrative appeals. Id. ¶ 23. As of October 31, 2009, FBI and OIP had reduced the backlog of pending appeals to 149. Id. While this number represents a significant decrease, the FBI has been required to divert personnel resources from the regular processing duties to achieve this reduction. Id.

Second, RIDS has been required to devote significant resources to several pending FOIA actions involving several thousands of documents in order to comply with agreed-upon litigation deadlines. Id. ¶¶ 31-36. Each of these cases involve requests which predate the FOIA request at issue here. For example, in Rosenfeld v. U.S. Department of Justice and U.S. Federal Bureau of Investigation, Civ. A. No. 07-3240-MHP (N.D. Cal.), the FBI has just completed the reprocessing of approximately 8,000 pages and is awaiting response from plaintiff regarding this material. Hardy Decl., ¶ 32. In addition, the FBI is currently reprocessing several large cross-references and searching for additional records. Id. In order to comply with these demands, several components of RIDS have realigned its personnel resources and have made a substantial commitment of resources to address these issues. Id.

Similarly, in New York Civil Liberties Union v. United States Department of Justice, Civ. A. No. 08-CV-5674 (S.D.N.Y.), the FBI has agreed to review an additional approximately 51,000 pages of interviews in order to produce a sample of 200 interviews. Hardy Decl., ¶ 34. These pages were spread across the country and located in each of the FBI's 56 field offices. Id. These pages are to be processed and released by November 27, 2009. Id. To meet this commitment, RIDS once again had to shift its already strained employee resources from other matters. Id.

The FBI is also currently processing thousands of pages in ACLU v. Department of Defense, et al., Civ A. No. 08-1003 (D.D.C.), in connection with a FOIA request for documents which were cited or referenced in a report by Office of Inspector General regarding the involvement of the FBI in the interrogation of detainees in Guantanamo Bay and Iraq. Hardy Decl, ¶ 33. This case involved more than 14,300 pages of records, which the FBI is processing on a periodic rolling basis.

In Forensic Justice Project, et al. v. Federal Bureau of Investigation, et al., No. 06-cv-1001 (D.D.C.), the FBI has located and scanned in approximately 206,452 pages of responsive documents.

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Rm. 7114
Washington, D.C. 20530
(202) 514-4960

Hardy Decl., ¶ 35. As of October 22, 2009, the FBI has released approximately 62,185 pages to the plaintiff, consistent with the agreement reached between the parties in that litigation. Id. Currently, thirty-one LASs in the Disclosure Unit are processing and releasing documents in this case on a rolling basis. Id. RIDS' employee resources will continue to be diverted in order to comply with the schedule contemplated in that case. Id.

Thus, while the FBI has made a reasonable effort to reduce its backlog, exceptional circumstances had impacted its current ability to process FOIA requests.

**3. The FBI is Exercising Due Diligence in Processing Plaintiff's Request.**

The FBI has exercised due diligence in responding to the plaintiff's multi-part FOIA request for records relating to the maintenance and operation of the VGTOF. On its face, plaintiff's request is very broad, seeking ten different categories of records, many of which with subcategories. Exhibit 1 to Hardy Decl. RIDS promptly conducted a preliminary search and found 2180 pages of potentially responsive records. Hardy Decl., ¶ 44. Because costs of duplicating these pages exceeded the amount that plaintiff had indicated that it was willing to pay in costs, the RIDS sent a letter to plaintiff asking it to state whether it was willing to pay for additional cost or whether it was interested in narrowing the scope of its request. Id. ¶¶ 10, 15. Because RIDS received no response, RIDS did not proceed to complete its search and processing of the request. Id. ¶ 10 n.1.[6]

This action was fully consistent with FOIA and the DOJ regulations. The FOIA generally requires that FOIA requesters pay for the reasonable search, duplication, and review costs connected with their requests. 5 U.S.C. § 552(a)(4)(A). Under DOJ regulations, when a component such as the FBI determines or estimates that the fees will amount to more than what a requester has indicated a willingness to pay, the component shall advise the requester. 28 C.F.R. § 16.11(e). The regulations

[6] Plaintiff alleges that it did not receive this letter. However, because the letter was not returned to the FBI, the FBI properly presumed that it had been received. In re Buckhnum, 951 F.2d 204, 207 (9th Cir. 1991) ("Mail that is properly addressed, stamped and deposited into the mails is presumed to be received by the addressee") (quoting In re Ricketts, 80 B.R. 96, 497 (Bankr. 9th Cir. 1987); Lepkowski v. U.S. Dep't of Treasury, 804 F.2d 1310, 1323 (D.C. Cir. 1986) ("Deposits of properly-addressed postage-prepaid matter in the mail are presumed to have been delivered to the addressee, and to have reached him in due course of the mail.") (Robinson, J., concurring) (footnote omitted); Makuch v. FBI, 2000 WL 915640, at *3 (D.D.C. 2000) ("There is a strong presumption that mails, properly addressed, having fully prepaid postage, and deposited in the proper receptacles, will be received by the addressee in the ordinary course of the mails.") (internal citation and quotation marks omitted).

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Rm. 7114
Washington, D.C. 20530
(202) 514-4960

provide that "the request shall not be considered received and further work shall not be done on it until the requester agrees to pay the anticipated total fee." Id. Courts have consistently found that the refusal or failure to commit to pay fees absolves the agency from conducting costly and time-consuming FOIA searches. See Judicial Watch, Inc. v. United States Dep't of Justice, 365 F.3d 1108, 1127 (D.C. Cir. 2004); Smith v. FBI, 517 F. Supp. 2d 451, 453-54 (D.D.C. 2007); Flowers v. Internal Revenue Serv., 307 F. Supp 2d. 60, 69 (D.D.C. 2004); Trulock v. United States Dep't of Justice, 257 F. Supp. 2d 48, 52-53 (D.D.C. 2003).

In any event, even if the RIDS had received a prompt response to its letter stating that plaintiff was not interested in narrowing the scope of the request but agreed to pay additional fees, plaintiff's request would still have had to wait in queue for actual processing. Hardy Decl., ¶ 37. Based on the number of potentially responsive records, plaintiff's request would fall in the large queue, and the FBI is still processing other large requests which predate plaintiff's request. Id. See also id. ¶¶ 32-36.

Moreover, any doubt about the FBI's "due diligence" is dispelled by the fact that FBI is currently processing plaintiff's request even though plaintiff has not indicated its willingness to pay the additional fees. Id. ¶ 16. If anything, this unusual and discretionary step demonstrates the FBI has gone beyond what is required because under its regulations, as the FBI could have insisted that plaintiff agree to pay the additional estimated fees. 28 C.F.R. § 16.11(e).

Despite this diligence, additional time is required to complete the processing of plaintiff's broad and multi-facet FOIA request. Although RIDS is still completing its search, the FBI has thus far identified 25,159 pages of potentially responsive records and 192 tape recordings which may contain responsive portions. Hardy Decl., ¶ 4. As explained supra at 4, the search is the first step in the process. RIDS must now review the records to determine whether they are in fact responsive. If the records are found to be responsive, the FBI must then conduct a page by page, line by line review to determine whether any portions are exempt from disclosure. Hardy Decl., ¶ 40. Because RIDS is completing its search, it does not at this time know the volume or nature of the records which may be identified as a result of the ongoing searches. Id. ¶ 43. Accordingly, RIDS cannot provide

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Rm. 7114
Washington, D.C. 20530
(202) 514-4960

an estimate of when it may complete the entire processing. Id.

Rather than waiting until it completes the entire processing, the FBI is willing to make productions on a periodic rolling basis with the first production to take place by December 15, 2009. Id. Defendant is also willing to make period status reports to the Court on the progress of its efforts to complete its search and processing of responsive records. See Electronic Frontier Foundation v. Dep't of Justice, 517 F. Supp. 2d at 121 (order granting stay required FBI to file status reports every 90 days).

**CONCLUSION**

For the foregoing reasons, the defendant respectfully requests that the Court grant this motion, and stay proceedings in this case.

Respectfully submitted,

TONY WEST
Assistant Attorney General

JENNY A DURKAN
United States Attorney

BRIAN C. KIPNIS
Assistant United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, WA 98101-7970
Telephone: (206) 553-7970
Fax: (206) 553-0116
E-mail: brian.kipnis@usdoj.gov

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/Marcia K. Sowles
MARCIA K. SOWLES
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 7114
Washington, D.C. 20530
Telephone: (202) 514-4960
Fax: (202) 616-8470
E-mail: marcia.sowles@usdoj.gov

Attorneys for Defendant

Notice of Motion and Motion
for an Open America Stay

Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Rm. 7114
Washington, D.C. 20530
(202) 514-4960

13