THE HONORABLE JUDGE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>Defendant | **No. C09-0642**<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR A STAY**<br><br>**(Note on Motion Calendar: December 11, 2009)** |

Pl's Brief in Opposition to Def's Mot for Stay
Case No. C09-0642

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Plaintiff American Civil Liberties Union of Washington ("ACLU") seeks to compel disclosure and release of agency records improperly withheld by Defendant U.S. Department of Justice ("DOJ"). Plaintiff seeks records on a matter of significant public concern, namely the operation and maintenance of an FBI database that as of 2003 contained at least 7,000 individuals – many of whom had no criminal records. The Federal Bureau of Investigation ("FBI"), a unit of the DOJ, has failed for the past eleven months to respond to the Plaintiff's FOIA request, in spite of Congress's requirement that agencies respond within 20 working days. 5 U.S.C. § 552(a)(6)(A). Having failed to comply with Congress's mandate, DOJ now petitions the Court for an *indefinite* stay of Plaintiff's action. (Def.'s Notice of Mot. and Mot. for Stay at 1 (Doc. No. 22) [hereinafter "Def.'s Mot."].) DOJ's motion should be denied.

As a preliminary matter, the parties have agreed to rolling document production beginning December 15, 2009. The parties' disagreement centers on the schedule for completing production and for Defendant's summary judgment motion, which would address any documents it wishes to withhold from production. Defendant seeks an unlimited amount of time in which to complete production and move for summary judgment. (*See* Joint Status Rep't ¶ 8(B) (Doc. No. 19); Def.'s Mot. at 2 (Doc. No. 22).) Plaintiff proposes a summary judgment filing deadline of February 1, 2010. (Joint Status Rep't ¶ 8(A) (Doc. No. 19).) Plaintiff's proposed date provides ample time for Defendant to complete production. It is nearly two months from this filing and more than 13 months after DOJ received Plaintiff's FOIA request.

The agency's motion for an indefinite stay of litigation should be denied. Defendant has not met either of Congress's two stringent criteria for even time-limited FOIA litigation stays. First, it has failed to show "exceptional circumstances," 5 U.S.C. §

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

552(a)(6)(C)(i) (2000), instead documenting only a "predictable agency workload of requests" without showing "reasonable progress in reducing its backlog of pending requests." *Id.* § 552(a)(6)(C)(ii). Second, DOJ failed to exercise due diligence: DOJ waited eleven months to address Plaintiff's fee waiver request and still has not produced a single document or proffered grounds for withholding responsive documents. Moreover, the *indefinite* duration of Defendant's proposed stay finds no support in the statute or caselaw and would effectively deprive Plaintiff of any means of compelling disclosure of the requested records. This Court should reject Defendant's efforts to re-write the FOIA statute in contravention of Congressional mandate.

A lengthy stay over and above the 13 months offered by Plaintiff would invite agencies to disregard Congress's enactment of the public's right to open government. Accordingly, Plaintiff respectfully requests that the Court deny the Defendant's motion and direct Defendant to produce the requested records, or in the alternative to move for summary judgment on any responsive records it has withheld, by February 1, 2010.

**STATEMENT OF FACTS**

The National Crime Information Center ("NCIC") is a nationwide clearinghouse of records operated by the FBI. The NCIC provides direct online access to its computerized index of criminal justice information for local, state, federal, and tribal law enforcement officers, government agencies, financial institutions, prospective employers, and others nationwide. *See* FBI, Nat'l Crime Information Center (NCIC), http://www.fbi.gov/hq/cjisd/ncic_brochure.htm, *attached as* Ex. A. The NCIC database includes a Violent Gang and Terrorist Organizations File ("VGTOF"), which contains entries on suspected terrorist organizations and individuals. As of 2003, there were over 7000 individuals listed in the VGTOF as

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

"terrorists"; entry into the terrorist member portion of the VGTOF does not require prior arrest or conviction for a terrorism offense. Ann Davis, Data Collection Is Up Sharply Following 9/11, *Wall Street Journal*, May 22, 2003 at B1. May 22, 2003 at B1, *attached as* Ex. B.

Both the use of the VGTOF and the criteria for entry into and continued inclusion in the database are matters of public concern. The public's interest in this information is time-sensitive, especially because an incorrect entry into the VGTOF carries potentially grave ramifications. For instance, a simple traffic stop can become a prolonged search, result in harsher treatment of individuals, and lead to direct contact between the patrol officer and the FBI. *See id.* (documenting a traffic accident involving a "gun-rights group member" that was treated by local police as a "terrorist contact" due to the man's VGTOF record). Although individuals can obtain a copy and request correction of their FBI identification record, *see* 28 C.F.R. §§ 26.30-34, no process exists for individuals to contest or ensure the accuracy of their inclusion in the VGTOF, or even to ascertain how, why, or whether they are included. "It is the FBI's longstanding policy to neither confirm nor deny whether an individual is listed in the VGTOF." *El Badrawi v. Dept. of Homeland Sec.*, 258 F.R.D. 198, 201 (D. Conn. 2009). Defendant DOJ has sought to keep both the VGTOF itself and the identities of all individuals listed in the database shrouded in secrecy, even in the face of lawsuits brought by individuals harmed due to their erroneous entry in the VGTOF. *See, e.g., id.* at 202-03 (Holding that inclusion in VGTOF may have contributed to a violation of due process rights by defendants who saw printouts of the VGTOF records).

On December 19, 2008, pursuant to FOIA, 5 U.S.C. § 552 (2000), Plaintiff requested "any record held by the U.S. Federal Bureau of Investigation describing the operation and maintenance of the National Crime Information Center ("NCIC") Violent Gang and Terrorist Organization File ("VGTOF")." (*See* Compl. (Doc. No. 1), Ex. A.)

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

In the same request, Plaintiff agreed to pay $100 in fees and requested a waiver of any fees exceeding that amount. *Id.* By letter dated January 6, 2009, Defendant acknowledged receipt of the request and advised Plaintiff it had begun searching the indices to the Central Records System at the FBI's Headquarters. (Def.'s Mot., Hardy Decl. (Doc. No. 22-2), Ex. B.)

Defendant states that it sent Plaintiff a letter dated January 9, 2009 advising that 2,180 potentially responsive pages had been identified and inquiring whether Plaintiff was interested in narrowing its request in order to reduce additional fees, although Plaintiff did not receive this letter. (Def.'s Mot. at 3-4 (Doc. No. 22); Joint Status Rep't at 3 ¶ 1 (Doc. No. 19)). The FBI failed to respond to Plaintiff's request for a fee waiver for nearly eleven months.[1] (*See* Hardy Letter of November 17, 2009, *attached as* Ex. C). To date, moreover, Defendant has failed to produce a single responsive record. Defendant has agreed to provide Plaintiff with an unspecified and incomplete subset of the responsive documents on December 15, 2009, nearly one year after Plaintiff made its FOIA request. Defendant also asks the court not to set *any* schedule for completing production or summary judgment.

## ARGUMENT

The FBI's extraordinarily slow pace violates FOIA and has already harmed the public by withholding time-sensitive documents. The FBI's proposed stay would allow it to circumvent FOIA altogether, withholding critical documents from the public for an indefinite period of time.

### I. Legal Standards

Timely, public knowledge of government activity is vital to a robust democracy. FOIA recognizes this "need for citizens to know what their government is up to," *Halpern v. FBI*, 181

[1] In Section Chief David Hardy's letter, dated November 17, 2009, Hardy writes "One aspect of your December 19, 2008 letter which the FBI has not yet addressed is a request for limitation of processing fees . . . and a request for waiver of all costs . . . if the fees amount to more than $100." (Ex. C)

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

F.3d 279, 284 (2d. Cir. 1999) and establishes a policy of openness toward government information. H.R. Rep. No. 104-795, at 6, (1996), *reprinted in* 1996 U.S.C.C.A.N. 3448, 3449. FOIA provides that within 20 working days of the receipt of a request, an agency must "determine . . . whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefore . . ." 5 U.S.C. § 552(a)(6)(A)(i). It further provides that "[u]pon any determination by an agency to comply with a request for records, the records shall be made *promptly* available to such person making the request." 5 U.S.C. § 552(a)(6)(C)(i) (emphasis added). Congress has recognized that delay in complying with FOIA requests is "tantamount to denial." H.R. Rep. No. 93-876 (1974).

Only where "the Government can show exceptional circumstances exist" *and* that "the agency is exercising due diligence in responding to the request" may a court "allow an agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(i). In *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976), the D.C. Circuit articulated the initial showing required for a stay: an agency must show that (1) it is "deluged with a volume of requests for information vastly in excess of that anticipated by Congress"; (2) that the "existing resources" are "inadequate to deal with the volume of such requests within the time limits of subsection (6)(A)"; *and* (3) that it is exercising due diligence in responding to the request at issue. In his *Open America* concurrence, Judge Leventhal reasoned that, in light of Congress's rejection of a proposed FOIA provision that would have allowed a 30-day extension for agencies that receive high volumes of requests, only an *unforeseeable* backlog should qualify as an exceptional circumstance. *Id.* at 617-18. The Ninth Circuit expressed agreement with Judge Leventhal's reasoning, and "accept[ed] and approve[ed] the majority opinion [in *Open America*] to the extent it is concurred in

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

by Judge Leventhal." *Exner v. Fed. Bureau of Investigation*, 542 F.2d 1121, 1123 (9th Cir. 1976).

In 1996, Congress limited the circumstances in which courts could grant *Open America* stays. *See* H.R. Rep. No. 104-795, at 14, *reprinted in* 1996 U.S.C.C.A.N. 3448, 3457 ("Relying upon overly broad dictum in this case, agencies have employed the exceptional circumstances-due diligence exception to obtain judicial approval for lengthy delays whenever they have a backlog."). Specifically, Congress clarified that an exceptional circumstance "does not include a delay that results from a predictable agency workload of requests, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(ii) (2000). This amendment sought to "improve public access to agency records and information . . . [and] ensure agency compliance with statutory time limits." H.R. Rep. 104-795, at 2, *reprinted in* 1996 U.S.C.C.A.N. 3448, 2448.

The Ninth Circuit has recognized that Congress "wrote a tough statute on agency delay in FOIA compliance" and "made it tougher" in 1996. *Fiduccia v. Dep't of Justice*, 185 F.3d 1035, 1041 (9th Cir. 1999). While noting practical challenges presented by the law, the court explained that "[t]he value of information is partly a function of time" and that "[s]o long as the Freedom of Information Act is the law, we cannot repeal it by a construction that vitiates any practical utility it may have." *Id.* at 1041 (overturning district court grant of an *Open America* stay). Defendant's proposed stay disregards congressionally-mandated time limits and seeks precisely the type of judicial repeal of FOIA previously rejected by the Ninth Circuit.

## II. Defendant Has Failed to Carry Its Burden of Establishing Its Entitlement to a Stay.

Issuing any stay in the present action would be contrary to the terms and goals of FOIA, and the Defendant's proposed *indefinite* stay finds no justification in

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

the statute or caselaw. As the Ninth Circuit noted, "Congress gave agencies 20 *days*, not years, to decide whether to comply with requests and notify the requesters."[2] *Fiduccia*, 185 F.3d at 1041 (emphasis in original). Under Plaintiff's proposal, Defendant will have had more than thirteen months to complete production and move for summary judgment on any withheld records. (*See* Joint Status Rep't ¶ 8(a) (Doc. No. 19).) Instead, the FBI seeks an indefinite stay based on its assertion that, after more than eleven months, it still does not "know the volume or nature of the records which may be identified as a result of the ongoing searches" and therefore "cannot provide an estimate of when it may complete the entire processing." (Def.'s Mot. at 12-13 (Doc. No. 22)) Defendant has not identified any precedent for an open-ended stay. (*See* Def.'s Mot. at 7 (Doc. No. 22).) Indeed, Defendant has failed to demonstrate that it is entitled to *any* stay, as it has shown neither exceptional circumstances nor due diligence, both required by 5 U.S.C. § 552(a)(6)(C)(i).

**A. Defendant has Not Demonstrated Exceptional Circumstances.**

Agencies must respond to a request for records with the statutory time-limit unless there are "exceptional circumstances." 5 U.S.C. § 552 (a)(6)(C). Defendant argues that a finding of exceptional circumstances is warranted by (1) the FBI's 2006-2008 relocation of its Record/Information Dissemination Section ("RIDS"); (2) an increase of approximately 8% in FOIA requests in FY 2009 when compared to the average number of requests over the past seven years; and (3) "numerous competing litigation deadlines." (*See* Def.'s Mot. at 8-9 (Doc. No. 22).) None of these claims support a finding of exceptional circumstances.

---

[2] The Court of Appeals also noted that FOIA "authorized agencies to give themselves extensions for 10 *days* for 'unusual circumstances,'" 183 F.3d at 1041 (citing 5 U.S.C. § 552(a)(6) (1999)) (emphasis in original), but Defendant has not invoked this provision.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

First, RIDS's relocation was completed months before Plaintiff's request and *more than one year* before Defendant's request for a stay; any lingering difficulties Defendant experiences related to the move cannot be fairly termed unforeseeable, nor can they justify a claim of "exceptional circumstances." Second, as the Ninth Circuit held in *Fiduccia*, a "slight upward creep" in requests is not an exceptional circumstance within the meaning intended by Congress. 185 F.3d at 1042. Finally, Defendant has failed to show that its competing litigation deadlines – one of which will be completed before briefing is complete in this matter – go beyond its predictable workload. The motion for a stay should be denied.

**1. Defendant Cannot Continue to Rely on its Completed Relocation as a Cause for Delay.**

RIDS began its relocation in the summer of 2006 and completed relocation more than one year ago, in October of 2008. (Def's Mot. at 8 (Doc. No. 22).) Defendant cites a D.C. District Court decision for its proposition that "staffing difficulties" occasioned by the move "constitute exceptional circumstances justifying granting the FBI additional time." *Id.* at 9 (citing *Elec. Frontier Found. v. Dep't of Justice*, 517 F. Supp. 2d 111, 118-19 (D.D.C. 2007). The district court in *Electronic Frontier Foundation*, however, issued its ruling in May 2007, while the relocation of RIDS was still in progress. Today, two and one-half years later, three and one-half years after RIDS began its relocation, and *more than one year after the relocation was completed*, the government seeks to indefinitely delay Plaintiff's request due to "staffing difficulties" related to the 2006-2008 move.

Even if this Court were to find that some current staffing difficulties are related to the 2006-2008 relocation, these difficulties could not justify a stay because they are not unanticipated. As noted above, this Circuit has adopted *Open America* only inasmuch as it

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

conforms to Judge Leventhal's concurrence, which explains that exceptional circumstances are shown by *unexpected* backlogs and also expresses concern that a policy of granting stays due to backlogs "will become in effect a self-fulfilling prophecy in derogation of Congressional intent for expedition." *Open America*, 547 F.2d at 616-618, 621; *see Exner v. Fed. Bureau of Investigation*, 542 F.2d 1121, 1123 (9th Cir. 1976); *see also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 259 (D.D.C. 2005) ("[T]he Court will not get involved in defendant's personal and project management difficulties . . . defendants have shown a *predictable* backlog of FOIA request") (emphasis added). The FBI's repeated characterization of its 2006-2008 move as an "exceptional circumstance" is precisely the sort of "self-fulfilling prophecy in derogation of Congressional intent for expedition" anticipated by Judge Leventhal, as shown by the fact that the FBI has made the same argument when seeking stays in FOIA cases for nearly three years. The Court in *Electronic Frontier Foundation* relied on "Mr. Hardy's [February 9, 2007] Declaration" in finding "an *unexpected* decrease in staff available to process . . . requests." *Elec. Frontier Found.*, 517 F. Supp. 2d at 119 (emphasis added). More than thirty-four months after Mr. Hardy's declaration, Defendants cannot continue to invoke the move as a source of an unforeseeable backlog. To the extent that any staffing difficulties persist, Plaintiff should not bear the cost of the FBI's failure to plan to meet predictable FOIA obligations.

**2. An 8% Increase in FOIA Requests Is Not An Exceptional Circumstance.**

Defendant's argument that a finding of "exceptional circumstances" is warranted because it has experienced an increase of less than 8% in FOIA/Privacy Act requests in fiscal year 2009 when compared with the average of the past seven years, (Def.'s Mot. at 9-10 (Doc. No. 22)), is plainly foreclosed by the Ninth Circuit's decision in *Fiduccia*. Overturning a stay issued by the

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

district court, the *Fiduccia* court addressed an increase of 22% in the FBI's FOIA caseload and explained that a finding of "exceptional circumstances" under those facts would be "clearly erroneous" as "[t]he FBI's own affidavits show that the circumstances were unexceptional, a slight upward creep in the caseload." 185 F.3d at 1042. If a 22% increase is a "slight upward creep" insufficient to warrant an *Open America* stay, then an 8% increase does not justify the FBI's request for a stay.

**3. "Competing Litigation Deadlines" are Unexceptional and Predictable.**

Defendant maintains that "numerous competing litigation deadlines" justify its request for an indefinite stay. (Def.'s Mot. at 8 (Doc. No. 22).) Routine demands of litigation, however, are not "exceptional circumstances." *Govt. Accountability Project v. Dept. of Health & Human Services*, 568 F. Supp. 2d 55, 61-62 (D.D.C. 2008) (finding that evidence that an agency "processed a number of large document productions arising out of litigation" did not establish "unpredictable agency workload" and could not show exceptional circumstances in the absence of evidence that litigation demands were unusual in comparison to those of years past). Defendant has failed to show that the demands it faces from FOIA litigation are unforeseeable. Many of the actions Defendant cites involve requests and settlements for cases that have been ongoing for years; for example, the initial request in *Forensic Justice Project v. Federal Bureau of Investigations*, 06-CV-1001 (D.D.C.), was sent on September 23, 2005. *See* Complaint, No. 06-cv-1001 (D.D.C. May 31, 2006). Defendant's difficulty in complying with foreseeable demands of litigation does not establish "exceptional circumstances." Moreover, one of the five litigation deadlines cited has already passed. *See Elec. Frontier Found.*, 517 F. Supp. 2d at 118 (holding that past litigation deadlines do not establish exceptional circumstances). The FBI had agreed to produce the requested documents in *New York Civil*

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

*Liberties Union v. United States Department of Justice*, Civ. A. No. 08-CV-5674 (S.D.N.Y.), by November 27, 2009. (Def.'s Mot., Hardy Decl., ¶ 9 (Doc. No. 22-2).)

The FBI does not claim that its current litigation demands are unusual or unforeseen, and Defendant has not provided any evidence regarding its litigation workload in past years. Without such a showing, the FBI cannot carry its burden to show "exceptional circumstances." *See Govt. Accountability Project*, 568 F. Supp. 2d at 61-62 (finding no "exceptional circumstances" in part because defendant presented no evidence of litigation demands in past years); *see also Elec. Frontier Found.*, 517 F. Supp. 2d at 118 (finding that predictable workload of administrative appeals did not show exceptional circumstances). As a major government agency, the FBI predictably receives a significant number of FOIA requests, and FOIA requires the agency to adopt mechanisms for responding promptly. The courts and Congress have made clear that the agency's failure to respond adequately to a predictable volume of requests, and litigation predictably resulting from such failures, does not permit it indefinitely to withhold newly requested information.

Finally, any increase in litigation has been the entirely predictable result of the Department of Justice's adoption in 2001 of a policy to defend all agency decisions to withhold records responsive to a FOIA request "unless [the agency] lack[s] a sound legal basis or present[s] an unwarranted risk of adverse impact on the ability of other agencies to protect other important records." Memorandum from Attorney General John Ashcroft (Oct.12, 2001) *attached as* Ex. D; *Cf.* Memorandum from Attorney General (Mar. 19, 2009)("rescinding[ing] Attorney General's FOIA Memorandum of October 12, 2001") *attached as* Ex. E. This policy reversed a longstanding rule and resulted directly and predictably in an increase in FOIA litigation. DOJ cannot today complain to this Court of its need "to devote

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

significant resources to several pending FOIA actions." (Def.'s Mot. at 10.)

**B. Defendant Failed to Exercise Due Diligence.**

The FBI failed to exercise due diligence in responding to Plaintiff's request, as evident from Defendant's decision to suspend all work on Plaintiff"s request, even as it delayed adjudication of the FOIA fee waiver request for eleven months; from Defendant's failure to produce a single document to date; and indeed from Defendant's proposal that it have an unlimited period of time in which to respond to this request. Defendant nevertheless claims that it exercised due diligence because: (1) it stopped conducting its preliminary search after the RIDS sent Plaintiff a letter stating that fees were likely to exceed $100; (2) even if the FBI had not suspended its search, Plaintiff's request would have fallen behind other requests on the FBI's "first-in, first-out" queue; and (3) on an unspecified date, the FBI resumed its search for responsive records. (Def.'s Mot. at 9 n.4, 11-12 (Doc. No. 22).)

These arguments are unavailing. First, even if Plaintiff had received the January 9, 2009 letter, it could not have made an informed decision on narrowing its document request since the FBI had not adjudicated the fee waiver request and had not completed preliminary processing of the request. By failing to timely adjudicate the waiver request, the FBI waived its ability to charge fees. 5 U.S.C. § 552(6)(A)(i); *see also Lawyers Committee for Civil Rights of San Francisco Bay Area v. U.S. Dept. of Treasury*, No. C 07-2590 PJH, 2009 WL 2905963, at *1 (N.D. Cal. Sept. 8, 2009) (agency "was required to act upon [the requestor's] fee waiver request within 20 days . . . but failed to do so, thus waiving any objection") (citing 5 U.S.C. § 552(6)(A)(i)), and thereby cannot cite fees as a ground for refusing to process the document

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

request.[3] Second, evidence that Defendant *generally* used a "first-in, first-out" system for processing does not demonstrate due diligence with respect to Plaintiff's *specific* request – particularly where the FBI concedes that it did not even place Plaintiff's request in its queue. (*See* Def.'s Mot. at 11-12). *See Gov. Accountability Project*, 568 F.Supp.2d at 55 (finding that agency's "'first-in, first-out' policy for handling FOIA requests . . . and the general efforts towards improving FOIA request processing" suggested general due diligence but were insufficient to show due diligence with regard to plaintiff's specific request); *Bloomberg, L.P. v. United States Food and Drug Administration*, 500 F. Supp. 2d 371, 376 (S.D.N.Y. 2007) ("While a general showing of an agency processing FOIA requests on a first-in, first-out basis, coupled with a multitrack processing system may be consistent with due diligence in some instances, this determination should not be automatic."). Third, the FBI offers no evidence as to when the search and processing of Plaintiff's request resumed, nor any estimate as to when it will be completed. Merely resuming the search cannot suffice to show diligence when Defendant failed for nearly eleven months to address Plaintiff's fee waiver request.

**C. Defendant Has Failed to Make Reasonable Progress in Reducing its Backlog.**

Congress limited *Open America* in 1996 by clarifying that an exceptional circumstance "does not include a delay that results from a predictable agency workload of requests, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(ii) (2000). Defendant has not established any recent progress in reducing its backlog. Defendant's evidence of backlog reductions during a period beginning in 1997 and ending

---

[3] While Defendant cites 28 C.F.R. § 16.11(e) in support of its claim that it was not required to continue its search before securing Plaintiff's willingness to pay fees, (Def.'s Mot. at 11-12 (Doc. No. 22)), that regulation applies to situations where a fee waiver has not been sought or has been timely denied. Plaintiff cannot be expected to have narrowed its request in order to limit fees *before* learning whether it was liable for *any* fees.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

December 31, 2006 – nearly three years ago and two years before Plaintiff's request – does not address the relevant time period. Although Defendant notes that the FBI successfully requested funds to improve its handling of FOIA requests during the 1997 and 1998 fiscal years, (Def.'s Mot. at 7 (Doc. No. 22)), this effort is over a decade in the past. Likewise, the FBI's argument that it has implemented initiatives aimed at reducing *future* backlogs, (Def.'s Mot. at 8), does not establish that the agency has made progress in reducing its backlog of "pending requests," 5 U.S.C. § 552(a)(6)(ii) (2000), during the past year. Even if the agency had shown evidence of good faith efforts to reduce its backlog in 2009, such efforts alone would not demonstrate actual backlog reductions. *See Fiduccia*, 185 F.3d at 1041-42 (overturning time-limited *Open America* stay even though "the FBI had exercised due diligence because it had requested additional money to deal with FOIA requests and been turned down, redistributed personnel to deal with the backlog, and was attempting to deal with the backlog in the most efficient manner possible"). As the Ninth Circuit has emphasized, Congress, not the courts, is the proper forum for amending FOIA or for providing the FBI with any additional resources that might be necessary to meet its FOIA obligations. *Fiduccia*, 185 F.3d at 1041.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's application for a stay, and instead direct the FBI to produce all responsive, non-exempt records no later than February 1, 2010, on which date the FBI would be permitted to move for summary judgment on any responsive documents it has withheld.

DATED this 7th day of December, 2009.

Respectfully submitted,

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

/s/ Michael Wishnie
Michael Wishnie,* Supervising Attorney
State Bar No. CT27221
Dror Ladin,** Law Student Intern
ALLARD K. LOWENSTEIN
INTERNATIONAL HUMAN RIGHTS CLINIC
NATIONAL LITIGATION PROJECT
127 Wall Street
New Haven, CT 06511
Tel. (203) 432-4800
michael.wishnie@yale.edu

Lee Gelernt,* State Bar No. NY-8511
Farrin Anello,* State Bar No. NY-4403952
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 549-2619
lgelernt@aclu.org
fanello@aclu.org

Sarah A. Dunne, WSBA #34869
Harry Williams IV, WSBA # 41020
ACLU OF WASHINGTON FOUNDATION
705 Second Ave, Suite 300
Seattle, WA 98104
Tel. (206) 624-2184
hwilliams@aclu-wa.org

Counsel for Plaintiff

* Admitted pro hac vice.
** Application for Admission to Limited Practice forthcoming

Pl's Brief in Opposition to Def's Mot for Stay--15
Case No. C09-0642

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184