1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                              )
AMERICAN CIVIL LIBERTIES UNION     )   No. C09-0642RSL
OF WASHINGTON,                                      )
                                                              )
                         Plaintiff,                          )
             v.                                                )   ORDER DENYING DEFENDANT'S
                                                              )   MOTION FOR OPEN AMERICA STAY
U.S. DEPARTMENT OF JUSTICE,            )
                                                              )
                         Defendant.                       )
_____)

This matter comes before the Court on defendant's "Notice of Motion and Motion for Open America Stay." Dkt. # 22. Having reviewed the memoranda and exhibits submitted by the parties, including defendant's "Notice of Filing of Status Report" (Dkt. # 25), the Court finds as follows:

**BACKGROUND**

On December 19, 2008, plaintiff submitted a Freedom of Information Act ("FOIA") request for records describing the operation and maintenance of the National Crime Information Center ("NCIC") Violent Gang and Terrorist Organization File ("VGTOF"). Plaintiff indicated that it was willing to pay up to $100 in copying costs and requested that any additional fees be waived. Defendant timely notified plaintiff that it had located responsive documents, but that the estimated duplication costs exceeded the amount plaintiff was willing to pay. When plaintiff did not respond – plaintiff maintains that it never received the notification

ORDER DENYING DEFENDANT'S
MOTION FOR OPEN AMERICA STAY

letter – defendant put plaintiff's FOIA request aside without addressing plaintiff's application for a waiver of fees.  In May 2009, plaintiff filed this action to compel production of the requested documents.  On November 17, 2009, defendant denied plaintiff's request for a fee waiver and now seeks additional time in which to produce the estimated 25,339 pages of documents and 192 audio tape recordings that are responsive to plaintiff's FOIA request.

## DISCUSSION

**A.  FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552**

Pursuant to FOIA § 552(a)(6), defendant had twenty days from receipt of plaintiff's request to notify plaintiff that it would comply with the request for production, at which point "the records [were to have been] made promptly available . . . ."  The strict statutory deadlines can be extended in two circumstances.  Recognizing that certain logistical hurdles could delay production, Congress specifically authorized the responding agency to extend the production period by up to ten days upon written notice to the requester.  5 U.S. C. § 552(a)(6)(B).  The "unusual circumstances" that can justify an administrative extension under this subparagraph include the need for consultation with other agencies, the location of responsive documents in field offices, and/or the volume of records that need to be reviewed.  It does not appear that defendant employed an administrative extension in this case.

Congress also gave the courts leeway to grant extensions of virtually any duration if the appropriate showing is made.  Pursuant to § 552(a)(6)(C)(I), the court may further extend the time to complete review and production of responsive documents "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request . . . ."  Plaintiff argues that defendant has failed to show either "exceptional circumstances" or "due diligence" and proposes a February 1, 2010, deadline for the completion of the production.

Defendant relies primarily on Open America v. Watergate Special Prosecution,

ORDER DENYING DEFENDANT'S
MOTION FOR OPEN AMERICA STAY          -2-

547 F.2d 605 (D.C. Cir. 1976), as support for its request for an indefinite extension of time. When Open America was decided, FOIA had been recently amended, and the court was being asked to interpret "exceptional circumstances" for the first time. The court noted that Congress had not appropriated any additional resources for implementation of the 1974 FOIA amendments and had mistakenly projected that the costs of compliance would be minimal. 547 F.2d at 612. The court therefore viewed § 552(a)(6)(C) as a necessary "safety valve" in case the rigid time limits of subparagraphs (A) and (B) proved unworkable. In this context, the D.C. Circuit found that the agency's evidence regarding the unexpectedly high number of FOIA requests received and the related costs of compliance could "reasonably be viewed as 'exceptional circumstances'" under § 552(a)(6)(C). Open America, 547 F.2d at 612.

In 1996, Congress amended FOIA to "ensure agency compliance with statutory time limits." H.R. 3802, 104th Cong., 110 Stat. 3048 (1996). Section 552(a)(6)(C) was divided into three subparts, and the following language was added as § 552(a)(6)(C)(ii):

> For purposes of this subparagraph, the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.

As noted by the Ninth Circuit, "Congress wrote a tough statute on agency delay in FOIA compliance, and recently made it tougher." Fiduccia v. U.S. Dep't of Justice, 185 F.3d 1035, 1041 (9th Cir. 1999).

B. "EXCEPTIONAL CIRCUMSTANCES"

Defendant argues that a judicial extension of time to complete production is appropriate under § 552(a)(6)(C) because:

(1) the 2006-2008 relocation of the Federal Bureau of Investigation's Record/Information Dissemination Section from headquarters to a facility in Virginia caused "numerous" employees to retire or resign;

ORDER DENYING DEFENDANT'S
MOTION FOR OPEN AMERICA STAY                -3-

>    (2)  the agency does not have the staff to respond adequately to all requests and administrative appeals;
>
>    (3)  the FBI is complying with court orders in other FOIA litigation and new administrative guidelines for processing FOIA requests;
>
>    (4)  plaintiff's request involves over 25,000 pages of potentially responsive records and 192 tape recordings;
>
>    (5)  the review of responsive materials is time-consuming and will likely require consultation with other agencies; and
>
>    (6)  the agency made substantial progress in reducing its backlog of requests between 1996 and 2006.

Most of these circumstances, such as office relocations, resignations,[1] litigation, and processing guidelines, affect how staff are allocated to various tasks and, ultimately, the speed of production. Predictable staffing limitations do not, however, constitute "exceptional circumstances."

> Though FOIA doubtless poses practical difficulties for federal agencies, federal agencies can educate Congress on the practical problems they have, and attempt to persuade Congress to change the law or provide additional funds to achieve compliance. So long as the Freedom of Information Act is the law, we cannot repeal it by a construction that vitiates any practical utility it may have.
>
> This is not to denigrate the practical problems. It may be that agency heads . . . can be forced by the Freedom of Information Act to divert staff from programs they think more valuable to Freedom of Information Act compliance. It may be that people with ulterior motives can use Freedom of Information Act requests to interfere with the proper functioning of federal agencies. Arguably taxpayers are providing an excess of free research and copying services to authors and investigators. But these policy concerns are legislative, not judicial, and we

---

[1] The move to Virginia was completed in October 2008, two months before plaintiff filed its FOIA request. Any residual effect of the move and mass exodus is now the status quo for the agency and can no longer constitute "exceptional circumstances."

ORDER DENYING DEFENDANT'S
MOTION FOR <u>OPEN AMERICA</u> STAY              -4-

intimate no views on them.

Fiduccia, 185 F.3d at 1041.

Nor has the agency shown that its overall workload during the relevant period justifies an extension of the normal 20-day production deadline. Defendant states that, over the past seven years, it has received an average of 1,043 FOIA requests per month, while the average for the first ten or eleven months of 2009 was 1,126 requests per month. A seven-year-average can hide many important facts. For example, if the number of requests has grown steadily over the years, a 2009 average that is in keeping with the decade-long trend would not be unusual or unexpected in any way. On the other hand, if the number of requests bounced widely between 2001 and 2008, the 2009 numbers may fall within the "normal" range. The declaration of David M. Hardy, the Records/Information Dissemination Section Chief (Dkt. # 22-2 at 15), suggests that the latter is true: during the relevant period, the number of requests fell below 915 per month in 2005 and rose above 1,250 per month in 2006. Given this wide fluctuation in the average number of requests, it is impossible to characterize the 2009 numbers as "exceptional."

The fourth and fifth factors urged by defendants are "unusual circumstances" as that term is used in § 552(a)(6)(B). Congress gave agencies the authority to delay production for ten days if the documents requested were voluminous and/or inter-agency consultation were required. These factors cannot be used to justify the open-ended judicial extension requested by the FBI in this case.

Given that the delay at issue in this case results from a predictable workload of FOIA requests, the Court may grant additional time to complete the review only if the agency "demonstrates reasonable progress in reducing its backlog of pending requests." § 552(a)(6)(C)(ii). Between 1996 and 2006, the agency hired additional staff and moved to paperless processing of FOIA requests, resulting in a ten fold decrease in pending requests.

ORDER DENYING DEFENDANT'S
MOTION FOR OPEN AMERICA STAY            -5-

Although the agency continues to update its technology in order to pursue "its primary goal of reducing the time required to process requests" (Decl. of David M. Hardy, Dkt. # 22-2 at 15), its actual progress in reducing the backlog of pending requests apparently stalled a few years ago. Defendant has not, therefore, shown that exceptional circumstances justify additional time in which to respond to plaintiff's FOIA request.[2]

## CONCLUSION

For all of the foregoing reasons, defendant's request for an indefinite extension of time in which to respond to plaintiff's FOIA request is DENIED. Pursuant to an agreement between the parties, defendant began producing responsive documents on December 15, 2009, when 1,495 pages of non-exempt documents were delivered to plaintiff's counsel. Because the resolution of this motion was delayed, defendant shall have until March 15, 2010, to complete production of all responsive, non-exempt records. A case management schedule consistent with this production deadline will issue shortly.

Dated this 19th day of January, 2010.

/s/ Robert S. Lasnik
Robert S. Lasnik
United States District Judge

---

[2] Because defendant must show both "exceptional circumstances" and "due diligence" in order to obtain an Open America stay, the Court need not consider whether defendant acted appropriately. The Court notes, however, that failing to act upon plaintiff's request for a fee waiver for eleven months does not bespeak diligence.

ORDER DENYING DEFENDANT'S
MOTION FOR OPEN AMERICA STAY            -6-