THE HONORABLE ROBERT S. LASNIK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON,

                  Plaintiff(s),

   v.

U.S. DEPARTMENT OF JUSTICE,

                  Defendant(s).

CASE No. C09-642RSL

**PLAINTIFF'S MEMORANDUM OF
LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

## INTRODUCTION

In the Freedom of Information Act request at issue in this lawsuit, Plaintiff seeks records on a matter of significant public concern:  the operation and maintenance of a Federal Bureau of Investigation file formerly known as the Violent Gang and Terrorist Organization File ("VGTOF"), part of the National Criminal Information Center database.   The VGTOF contains records on hundreds of thousands of individuals, many without criminal convictions and many entered in error.  Because the database is accessible to nearly one million federal, state, and local law enforcement officers, and may be available to banks and employers, individuals listed in the VGTOF may be subjected to lengthy traffic stops, harsh treatment by police, questioning, or even arrest.

The government has previously released certain information about the size and maintenance of the VGTOF – information falling in the same categories it now claims are exempt from disclosure under Exemptions 2 and 7(E) of the Freedom of Information Act ("FOIA").  Nevertheless, in this case the FBI has withheld information that is critical to public oversight of the VGTOF.  For example, it has refused to release basic aggregate statistical data, records of database leaks and errors, and certain information about how record entry and modification criteria have been implemented.

In part to limit the burden on Defendant in producing descriptions of withheld information, Plaintiff agreed to proceed to summary judgment based upon a small subset of the FBI's withholdings:  namely, the 425 pages withheld in full and a representative sample of 143 partially-withheld pages.  Still, in its motion for summary judgment, the FBI does not provide informative descriptions of each document, instead relying upon repetitive, boilerplate language that merely frustrates the adversary process.

Because the government has not met its burden of demonstrating that its withholdings are justified under FOIA exemptions, Defendant's motion for summary judgment on these withholdings should be denied, and the Court should enter summary judgment for Plaintiff and

1

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

order the release of the records for which the FBI has failed to justify its withholding.  At a minimum, the Court should review the withheld and redacted documents *in camera*. Defendant's motion for summary judgment should also be denied with respect to its claim that Plaintiff is not entitled to a fee waiver and summary judgment on that claim should be entered in favor of Plaintiff, because the request qualifies for a public interest fee waiver and Defendant has waived its ability to charge fees.  Plaintiff does not oppose Defendant's motion with respect to the adequacy of the search performed.

## STATEMENT OF FACTS

The National Crime Information Center ("NCIC") is a nationwide clearinghouse of records operated by the FBI.  The NCIC provides direct online access to a computerized index of criminal justice information for local, state, and federal law enforcement officers.[1]  The NCIC database includes a file previously known as the Violent Gang and Terrorist Organizations File ("VGTOF"), which contains entries on suspected terrorist organizations and members, and gangs and potential members.  The two parts of this file were renamed in 2009 as the Known or Appropriately Suspected Terrorist File ("KST") and the Gang File.[2]

The FBI's production in this case confirms that the number of records in the VGTOF has skyrocketed in recent years, with the suspected terrorist member entries alone climbing from approximately 7,000 in 2003[3] to 271,842 in December 2008.[4]  This number stands to grow

---

[1] *See* FBI, National Crime Information Center (NCIC), http://www.fbi.gov/hq/cjisd/ncic_brochure.htm.

[2] *See* FBI, NCIC Technical & Operational Update 08-6 44 (NCIC-VGTOF-352) (Dec. 1, 2008), Anello Decl. Ex. I, at 115-16; FBI, NCIC:  The National Crime Information Center, www.fbi.gov/hq/cjisd/ncic.htm; *see also* The Lessons and Implications of the Christmas Day Attack: Watchlisting and Pre-Screening: Hearing Before the S. Comm. on Homeland Security and Governmental Affairs, 111th Cong. 1-3 (Mar. 10, 2010) (statement of Timothy J. Healy, Director, Terrorist Screening Center, Federal Bureau of Investigation) [hereinafter Healy Statement]  http://hsgac.senate.gov/public/index.cfm?FuseAction=Files.View&FileStore_id=b6b1ea4b-c4e8-483e-9d46-2dbb236e6936.

Please note that the pages of the Anello Declaration and its exhibits are numbered consecutively, as are the pages of the Khader Declaration and its exhibits, and the pincites herein refer to the consecutively-numbered pages.

[3] Ann Davis, *Use of Data Collection Is Up Sharply Following 9/11*, Wall Street Journal, May 22, 2003 at B1, Anello Decl. Ex. A, at 5 [hereinafter Davis WSJ Article].

[4] Staff Paper (Draft), CJIS Advisory Policy Board Working Group Meetings Spring 2009 (Dec. 22, 2008) (NCIC-VGTOF-8335), Anello Decl. Ex. B, at 9.

2

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

further, considering that the VGTOF is now populated by records from the Terrorist Screening Database (hereinafter "Consolidated Watchlist") maintained by the FBI's Terrorist Screening Center ("TSC").  As of May 2007, the Consolidated Watchlist contained 755,000 records.[5]  Even in 2003, moreover, the VGTOF contained tens of thousands of individual records marked as suspected gang members.[6]

Perhaps unsurprisingly for a database that has labeled hundreds of thousands of individuals as "known or appropriately *suspected* terrorists," (emphasis added), the error rate for VGTOF records is high.  A 2005 TSC audit – performed at a time when the VGTOF was much smaller than it is today – found a 40% error rate.[7]  The TSC has estimated that about half of the tens of thousands of potential matches it received from frontline screening agencies (via various downstream databases) between December 2003 and January 2006 were misidentifications.[8]

An erroneous entry into the VGTOF carries potentially serious ramifications.  For instance, a simple traffic stop can last for hours because the NCIC record for an individual in the VGTOF instructs local law enforcement officers to contact the FBI.[9]  Some records also instruct officers to arrest and detain the subject,[10] and the individual may be subjected to harsh treatment by local officers who perceive him or her as a potential terrorist.  *See, e.g.*, *El Badrawi v. Dept.*

---

[5] U.S. Government Accountability Office (GAO), Terrorist Watch List Screening:  Opportunities Exist to Enhance Management Oversight, Reduce Vulnerabilities in Agency Screening Processes, and Expand Use of the List 7-8 (GAO-08-110) (Oct. 2007) [hereinafter GAO Oct. 2007 Report], www.gao.gov/new.items/d08110.pdf.

[6] Davis WSJ Article, *supra*, note 3, Anello Decl. Ex. A, at 5.

[7] U.S. Dep't of Justice, Office of the Inspector General (OIG), Review of the Terrorist Screening Center 61-62 (Audit Report 05-27) (June 2005), www.justice.gov/oig/reports/FBI/a0527/final.pdf; *see also* OIG, The FBI's Terrorist Watchlist Nominations Practices, Audit Report 09-25 (May 2009), www.justice.gov/oig/reports/FBI/a0925/final.pdf; *see also* GAO, Terrorist Watch List Screening:  Efforts to Help Reduce Adverse Effects on the Public 4 (GAO-06-1031) (Sept. 2006), http://www.gao.gov/new.items/d061031.pdf; Matthew Dolan et al., *Man in terror database arrested:  Pakistani citizen came up on list during traffic stop in Pikesville; Officials say he isn't a likely threat; N.Y. man faces charges of selling fake immigration documents*, Baltimore Sun, Aug. 9, 2005, Anello Decl. Ex. C, at 13 (explaining that "it was unclear why" the individual was in the VGTOF, that officials said privately that "they didn't believe he posed a likely terrorist threat," and that he was charged only with an immigration-related offense).

[8] GAO Oct. 2007 Report, *supra* note 5, at 0, 4, 19-20.

[9] *Id.* at 75-76; NCIC Technical & Operational Update to NCIC 2000 Operating Manual 12-14 (Nov. 7, 2005), Anello Decl. Ex. G, at 108-110 [hereinafter 2005 NCIC TOU]; Mem. from FBI Counterterrorism Division to FBI Field Offices (June 12, 2002), Khader Decl. Ex. A, at 9-10.

[10] *Id.*

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

*of Homeland Sec.*, 258 F.R.D. 198, 202 (D. Conn. 2009) (noting that inclusion in VGTOF may have contributed to violation of plaintiff's due process rights by defendants who saw printouts of VGTOF records). NCIC records are also available to certain prospective employers and financial institutions.[11] Similarly, information on individual VGTOF records has been leaked to unauthorized entities including private individuals,[12] creating a risk of public humiliation and loss of employment.

No process exists for individuals to contest or ensure the accuracy of their inclusion in the VGTOF, or even to ascertain how, why, or whether they are included in this portion of the NCIC database.[13] "It is the FBI's longstanding policy to neither confirm nor deny whether an individual is listed in the VGTOF." *El Badrawi*, 258 F.R.D. at 200.

As discussed in greater detail in connection with Exemptions 2 and 7(E) below, the FBI has released certain information about the VGTOF, such as criteria and procedures for "nominating" individuals to the terrorist or gang member file,[14] about "silent hits" designed to

---

[11] 28 C.F.R. § 50.12(a) (authorizing dissemination of NCIC records to banking and financial institutions, state agencies for employment or licensing purposes, "segments of the securities industry," and registered futures associations).

[12] *See, e.g.*, NCIC-VGTOF-11534-11536 (records provided to potential employer), NCIC-VGTOF-11504-11505 (same), NCIC-VGTOF-11497-11498 (records provided to insurance company), NCIC-VGTOF-11529-11530 (records leaked during background check by employer) and NCIC-VGTOF-11502 (records provided to private citizen), *attached collectively as* Anello Decl., Ex. D, at 18-26.

[13] In contrast, individuals can obtain a copy and request correction of their FBI identification record. *See* 28 C.F.R. §§ 16.30-34.

[14] The TSC's stated standard for "nominating," or entering, an individual into the Consolidated Watchlist requires only (1) "sufficient identifying data so that a person being screened can be matched to or disassociated from a watchlisted terrorist" and (2) "reasonable suspicion," that is, "articulable facts which, taken together with rational inferences, reasonably warrant the determination that an individual 'is known or suspected to be or has been engaged in conduct constituting, in preparation for, in aid of or related to terrorism and terrorist activities.'" Healy Statement, *supra* note 2 at 2 (citing Presidential Directive).

Some subset of TSDB records are entered in the VGTOF. The NCIC Operating Manual advises that an individual may be entered in the VGTOF if the following criteria are satisfied: (1) the individual is "a member of a gang or terrorist organization and subgroup thereof" that had been entered in the VGTOF, <u>and</u> (2) he or she has "admitted membership in that gang or terrorist organization (and subgroup) at the time of his/her arrest or incarceration," <u>or</u> (3) he or she meets any two of the following criteria: (a) "Has been identified by an individual of proven reliability as a group member"; (b) "Has been identified by an individual of unknown reliability as a group member and that information has been corroborated in significant respects"; (c) "Has been observed by members of the entering agency to frequent a known group's area, associate with known group members and/or affect that group's style of dress, tattoos, hand signals, or symbols"; (d) "Has been arrested on more than one occasion with known group members for offenses consistent with group activity"; and (e) "Has admitted membership in the

---

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

1  prevent local law enforcement agents from viewing certain entries, and about the "handling

2  codes," or caveats, that the VGTOF provides to encountering law enforcement agents.   The

3  government's summary judgment brief does not even acknowledge the release of most of this

4  information, much less explain why the withholding of similar information is now justified.

5      Many questions of vital public interest remain unanswered.  To be fully informed about

6  how this database works and how to avoid erroneous entry, the public needs further information

7  regarding how nominations are implemented and maintained, about errors in the database and

8  internal guidelines for error correction, about misuse of the database, and about how the database

9  affects the hundreds of thousands of individuals named therein.

## STANDARD OF REVIEW

10      "As a general rule, all FOIA determinations should be resolved on summary judgment."

11  *Rodriguez v. McLeod*, No. CV F 08-0184, 2008 WL 5330802, at \*3 (E.D. Cal. Dec. 18, 2008)

12  (citing *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114 (9th Cir. 1988)).  "Unlike the

13  typical summary judgment analysis," in a FOIA case "the facts are rarely in dispute." *Id.*

14  (quoting *Minier v. CIA*, 88 F.3d 798, 800 (9th Cir. 1996)).  Thus, it is common for only the

15  defendant to move for summary judgment, and for the Court to *sua sponte* enter judgment for the

16  plaintiff in the event it concludes that the withholdings are not permitted by FOIA.  *See National

17  Council of La Raza v. Dep't of Justice*, 339 F. Supp. 2d 572, 579 (S.D.N.Y. 2004) ("When a

18  party moves for summary judgment, the court on its own initiative may grant summary judgment

19  for the other party if 'it appears clearly upon the record that all of the evidentiary materials that a

20  party might submit in response to a motion for summary judgment are before the court' and

21  'those materials show that no material dispute of fact exists and that the other party is entitled to

22  judgment as a matter of law.'") (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir.1996)); *see

also id.* at 579 n.43 (citing *Am. Soc'y of Pension Actuaries v. IRS*, 746 F. Supp. 188, 192

---

identified group at any time other than arrest or incarceration."  NCIC 2000 Operating Manual:  Violent Gang and
Terrorist Organization File (VGTOF) (Dec. 1999), Anello Decl. Ex. E, at 53.

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

5

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

(D.D.C.1990) (awarding partial summary judgment to plaintiffs in FOIA case even though plaintiffs had not moved for summary judgment, because *in camera* document review showed unambiguously that the agency had incorporated deliberative documents into policy and therefore the documents were not within Exemption 5)).

## SUMMARY OF ARGUMENT

Considering the hundreds of thousands of individual entries in the VGTOF, their widespread availability to law enforcement and other personnel, the potential for erroneous entries and misidentification, and the deprivations of liberty that may result from VGTOF "hits," *see* Facts, *supra*, the information sought by Plaintiff is of significant public concern.  The government asserts that most of its withholdings are justified pursuant to Exemptions 2 and 7(E) because release would "risk circumvention of the law," but it does not meet its burden of showing that these exemptions apply.  It relies on categorical, boilerplate language that provides little information about the particular documents at issue, and it overlooks the fact that the agency has already released significant amounts of information similar to that it now claims would risk circumvention of the law.  The overbreadth of the withholdings is similarly demonstrated by the fact that at least one of the identical documents at issue is already available in the 9/11 Commission archive in far less redacted form.  Moreover, many of the documents the FBI withholds under these exemptions are not properly classified as "predominantly internal" agency materials, as Exemption 2 requires, or as "law enforcement" materials, as Exemption 7(E) requires.  The FBI's boilerplate *Vaughn* indices similarly fail to justify its claims that other withholdings fall under Exemptions 1 (classified information), 5 (deliberative process privilege), 6 and 7(C) (personal privacy), or 7(D) (confidential sources).  It also fails to demonstrate that all segregable, non-exempt information has been produced.  The Court should therefore deny Defendant's motion for summary judgment as to the withholdings and enter summary judgment for Plaintiff, or in the alternative require Defendant to submit all withholdings for *in camera* review.

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

Moreover, the Court should deny Defendant's motion as to waiver of duplication fees beyond $100, because Defendant waived its ability to collect fees by failing to respond to Plaintiff's request within the statutory time period.  Plaintiff is also entitled to a fee waiver because its request is plainly "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii).  For these reasons and because there are no remaining factual disputes, Plaintiff respectfully requests that the Court grant summary judgment for Plaintiff with respect to both the withholdings and the waiver of duplication fees.

## ARGUMENT

### I.      FOIA Favors Broad Disclosure.

"[D]isclosure, not secrecy, is the dominant objective" of FOIA.  *Cook v. U.S. Dep't of Justice*, No. C04-2542L, 2005 WL 2237615, at *1 (W.D. Wash. Sept. 13, 2005) (Lasnik, J.) (quoting *Dep't of the Air Force v. Rose,* 425 U.S. 352, 361 (1976)).  The statutory exemptions to disclosure are construed narrowly, and "the burden is on the agency to sustain its action."  *Id.* (quoting 5 U.S.C. § 552(a)(4)(B)).  Government agencies seeking to withhold documents are "required to supply the opposing party and the court with a '*Vaughn* index,' identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption."  *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991).  "The purpose of the index is to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding."  *Id.* (internal quotation omitted).  Thus, "boilerplate explanations" consisting of "categorical descriptions of redacted material coupled with categorical indication of anticipated consequences of disclosure" are "clearly inadequate." *Id.* at 979.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

Courts review exemption claims de novo, and may examine documents *in camera*.  5 U.S.C. § 552(a)(4)(B).  When an agency invokes a national security exemption its affidavits are typically afforded "substantial weight" but only if they are not "controverted by contrary evidence."  *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 68 (2d Cir. 2009).  Summary judgment is warranted only where agency "affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by . . . contrary evidence in the record."  *Id.* at 73.  Even in the face of national security-related exemption claims, the Court must not "relinquish[] [its] independent responsibility" to assess the propriety of the agency's justifications.  *Goldberg v. Dep't of State*, 818 F.2d 71, 77 (D.C. Cir. 1987); *see also Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) ("deference is not equivalent to acquiescence").  FOIA rests on the premise that "judges c[an] be trusted to approach . . . national security determinations with common sense, and without jeopardy to national security."  *Ray v. Turner*, 587 F.2d 1187, 1194 (D.C. Cir. 1978).

Finally, even where some portions of a record are exempt, the "agency must disclose '[a]ny reasonably segregable portion of a record ... after deletion of the [exempt] portions.'"  *Pacific Fisheries, Inc. v. United States,* 539 F.3d 1143, 1148 (9th Cir. 2008) (citing  5 U.S.C. § 552(b)). "The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed."  *Id.* (citing 5 U.S.C. § 552(a)(4)(B), (b)).  "'Courts must apply that burden with an awareness that the plaintiff, who does not have access to the withheld materials, is at a distinct disadvantage in attempting to controvert the agency's claims.'" *Id.* (citing *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997) (quotation omitted)).

## II.   Defendant Has Not Demonstrated that Any FOIA Exemptions Justify Their Withholdings.

Most of Defendant's withholdings – a total of 425 full pages and 137 of the representative partially redacted pages – invoke Exemptions 2 and 7(E).  For certain documents,

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Defendant invokes Exemptions 1, 5, 6, 7(C), and 7(D).  The boilerplate language in Defendant's Declaration and *Vaughn* indices does not justify any of these withholdings.  For the Court's convenience, the government's withholdings are summarized in the attached chart, based upon the representative sample. Anello Decl., Ex. F, at 91-95.

### A.   Exemption 2

Defendant's *Vaughn* indices do not justify the voluminous withholdings claimed under the "High 2" Exemption.  First, it fails to demonstrate that disclosure any of the individual documents in question would create specific risks of "circumvention of agency regulation," *Milner v. U.S. Dep't of the Navy*, 575 F.3d 959, 969-70 (9th Cir. 2009), *cert. granted*, --- S.Ct. ----, 2010 WL 1180680 (June 28, 2010).  Instead, Defendant claims this exemption for broad categories of information that include other information previously released to the public, demonstrating that such information does not categorically risk circumvention of agency regulation.  Second, the records at issue are not "predominantly internal" as required by this exemption.  Some of the records have been shared with agencies outside the FBI.  In addition, Exemption 2 does not permit "secret law," that is, withholding of guidelines "as important to the regulation of public behavior as if they had been codified."  *Id.* at 969.  Withholding of criteria and procedures for determining whether an individual may be entered in the VGTOF, which caveats apply to the entry, and when to modify or cancel the entry effectively creates secret law that exposes individuals to potentially erroneous inclusion in the database and to accompanying infringements on liberty, with no procedure for redress.

***1. Legal Standards.***  Exemption 2 involves matters "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  The "general thrust of [Exemption 2] is simply to relieve agencies of the burden of assembling and maintaining for public inspection matter in which the public could not reasonably be expected to have an interest," *Dep't of Air Force v. Rose*, 425 U.S. 352, 369-70 (1976).  Some courts, including the Ninth Circuit, have held that § 552(b)(2) encompasses two exemptions.  The first, "Low 2," is

9

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18ᵗʰ Floor, NY, NY 10004
(212) 549-2616

not at issue here.[15]  "High 2," which Defendant has invoked, applies to "[1] a personnel document . . . if it is [2] predominantly internal and [3] its disclosure presents a risk of circumvention of agency regulation."  *Milner*, 575 F.3d at 968.

Materials reflecting communications with other agencies are not "predominantly internal."  *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1112-13 (D.C. Cir. 2007); *El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 316 (D. Conn. 2008).  Moreover, because individuals have a right to receive notice of the law governing their behavior, "predominantly internal" records do not include those that embody "secret law," even where secret law "was developed for purely internal uses." *Milner*, 575 F.3d at 968; *see also Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1075 (D.C. Cir. 1981)); *Hardy v. Bureau of Alcohol, Tobacco & Firearms*, 631 F.2d 653, 657 (9th Cir. 1980).

Finally, the agency's *Vaughn* index must demonstrate that after deletion of any exempt information, "[a]ny reasonably segregable portion of a record" has been disclosed.  5 U.S.C. § 552(b); *see Wiener*, 943 F.2d at 988.

**2.  *The FBI has not justified its "High 2" withholdings.***  First, the FBI has not established that disclosure of the specific information withheld pursuant to Exemption 2 would risk circumvention of agency regulation.  Rather, it provides only categorical descriptions of the documents at issue and seeks to withhold types of information the FBI has already disclosed on numerous occasions.  Without addressing most of the individual documents it seeks to withhold under these exemptions, Defendant claims broadly that these exemptions cover entire categories of information:  (1) "information regarding a specific procedure used to prevent an individual from determining whether he/she is a known or suspected terrorist as identified in the VGTOF"; (2) VGTOF nomination criteria; (3) the contents of the FD-930, a nomination form used to enter individuals into the VGTOF and other terrorist watchlists; (4) "VGTOF Field Codes," which

---

[15] "Low 2" refers to "rules and practices regarding mundane employment matters such as parking facilities, lunch hours, and sick leave, which are not of genuine and significant public interest."  *Milner*, 575 F.3d at 963 (citation omitted).

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Fl., NY, NY 10004
(212) 549-2616

correspond to different caveats, or guidelines, that a record provides to the encountering agent;

(5) these "caveats/guidelines"; (6) "statistical reports" about the VGTOF; (7) "[i]nformation

recorded and maintained in specific non-public databases and/or systems"; and (8) responsive

information in several Terrorist Screening Center Standard Operating Procedures.  Def.'s Mot.

Summ. J. at 15-18 (Dkt. No. 39).  For each category, Defendant has drafted a general statement

about the need to withhold information, which it repeats in boilerplate fashion in *Vaughn* indices

addressing that category.[16]

Yet prior to this lawsuit, the government had already publicly released certain

information in the same categories, confirming that these categorical labels alone do not prove

that disclosure would risk circumvention of agency regulation.  These disclosures include the

public release via the 9/11 Commission of a far less heavily redacted version of the FBI's current

"Document 112," a June 10, 2002 electronic communication ("EC") from the FBI

Counterterrorism Division, Domestic Terrorism/Counterterrorism Planning Section to FBI field

offices.[17]  The version in the 9/11 Commission archive discloses information in *all* of the

categories that the FBI has redacted in Document 112 (VGTOF entry criteria, field codes,

caveats/guidelines to local law enforcement, and the "silent hits" procedure, which allows for

entries in the VGTOF with extra safeguards to avoid notifying the subjects.) *See* Khader Decl.,

Ex. 1.  This disclosure illustrates the fallacy in the FBI's argument that disclosure of other

information within these categories would necessarily risk circumvention of the law.

For example, Mr. Hardy asserts in conclusory fashion that disclosure of "VGTOF field

codes" would permit a group to "readily change its tactics, frustrate an existing VGTOF entry,

compromise an investigation, and possibly increase its chances of circumventing the law." Def.'s

Mot. Summ. J. 17 (Dkt. No. 39).  But the June 10, 2002 EC shows that the field codes in

question consist merely of categories simply numbered one through four, describing how the

---

[16] The government does not specify in its brief which documents fall into each of these categories.

[17] FBI Doc. 112 (NCIC-VGTOF-11131-11139, Dkt. No. 39-9); *see* Khader Decl., Ex. A, at 4-14.
Although the page breaks in the version of the EC in the 9/11 Commission archive differ from those in the current
production, this appears to result from a difference in font size rather than content.

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

subject entered the VGTOF, that is, whether he or she was a subject of criminal charges, an "Individual[] of Special Counterterrorism interest" to the FBI, a subject of an existing FBI investigation or inquiry, or an "Individual[] of active Investigative interest to the FBI." Each code corresponds to a particular "caveat" or "handling code," which advises law enforcement officers on how to approach the individual named in the VGTOF. Merely revealing these designations apparently did not create any reasonable risk of circumvention of agency regulation in the agency's view and would not do so now, particularly since they do not reveal how any particular individual or group entries are coded.

Likewise, whereas the Hardy Declaration asserts that disclosure of the caveats would permit subjects to "attempt to evade arrest or possibly threaten harm to the encountering law enforcement official," the caveats merely instruct the officers to "approach with caution," state that the individual subject is "armed and dangerous" (for those individuals with formal criminal charges) and advise the officers to call the FBI and to either arrest or investigate the individual.[18]

The public release of the June 10, 2002 EC was not an aberration. Via public Congressional testimony, government oversight reports, the 9/11 Commission archive, and even other parts of the present production, the FBI has released additional information in the categories it now claims must be concealed to prevent circumvention of the law.

*a. Silent Hits.* Defendant withheld about 11 documents in full because they refer to a procedure the agency claims to be so secret that even its "name" and "existence" may not be disclosed. Def.'s Mot. Summ. J. 16 (Dkt. No. 39). However, this discussion appears to reference the "Silent Hits" procedure, which the FBI previously disclosed not only in the June 10, 2002 EC but also in Robert Mueller's 2006 report to the Senate Judiciary Committee. The then-FBI director explained that "'[s]ilent hit' coding means the FBI case agent will be notified

---

[18] Khader Decl., Ex. A, at 9-10.

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

electronically of an encounter but the encountering official will not be aware of the 'hit'" and

described several circumstances in which this coding is used.[19]

   *b. Nomination Criteria.*  The FBI, GAO, and DOJ Office of the Inspector General have

published information regarding the criteria and basic processes for nominating individuals to the

VGTOF and the Consolidated Watchlist now used to populate the VGTOF.[20]

   *c. Fields in the Watchlist Nomination Form (FD-930).*  The titles of data fields contained

in the VGTOF and other watchlists – similar if not identical to those on the FD-930 nomination

form, have been released to the public in the 9/11 Commission archive.[21]   It is highly improbable

that the release of such unremarkable field *titles* – "Name," "Aliases," "Birth date," and

"Passport Number," to name a few – could lead to circumvention of agency regulation.

   *d. "VGTOF Field Codes" and "Caveats/guidelines."*  In addition to the June 10, 2002

EC, information regarding field codes and caveats has been disclosed in Director Mueller's

testimony, and at least one recent GAO report.[22]   The inconsistency of the FBI's position on the

latter category is also illustrated by its release in this production of a 2005 update to the NCIC

Operating Manual that contains sample caveats.[23]   Moreover, courts have ordered the release of

---

   [19] Responses of the Federal Bureau of Investigation Based Upon the May 2, 2006 Hearing Before the S. Comm. On the Judiciary Regarding FBI Oversight 72, 109th Cong. 72 (2006) (testimony of Robert S. Mueller, Director, FBI), www.ala.org/ala/issuesadvocacy/advocacy/federallegislation/theusapatriotact/Muellerresponses050206.pdf, [hereinafter Mueller Testimony].

   [20] *See, e.g.*, Sharing and Analyzing Information to Prevent Terrorism:  Hearing Before the H. Comm. on the Judiciary, 111th Cong. 1-3 (Mar. 24, 2010) (statement of Timothy J. Healy, Director, Terrorist Screening Center), judiciary.house.gov/hearings/pdf/Healy100324.pdf; Healy Statement, *supra* note 2, at 1-3 (same); U.S. Dep't of Justice, OIG, The Federal Bureau of Investigation's Terrorist Watchlist Nomination Practices (Audit Report 09-25) (May 2009), http://www.justice.gov/oig/reports/FBI/a0925/final.pdf (discussing process for nominations and modification and deletion of records); *id.* at 5 n.49, 13 (explaining that the Terrorist Screening Center's database feeds into the VGTOF), 48-50 & n.104 (discussing nomination of military detainees to the TSDB and the VGTOF); NCIC 2000 Operating Manual: VGTOF (Dec. 1999), Anello Decl., Ex. E, at 53; GAO Oct. 2007 Report, *supra* note 5, at 7-9, 18-21; Mueller Testimony, *supra* note 20, at 72-73.

   [21] *E.g.*, GAO, Record of Meeting with Dep't of Homeland Security 3, 16, (Mar. 19, 2003), Khader Decl. Ex. B, at 18, 22.

   [22] *See, e.g.*, GAO Oct. 2007 Report, *note* 5, *supra*, at 13-15, 75-76; Mueller Testimony, *supra* n.21, at 72-73.

   [23] 2005 NCIC TOU, *supra* n. 9, at 11-15, Anello Decl. Ex. G, at 107-11 (sample caveats to encountering officers).

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

individual VGTOF printouts, which include caveats.  *E.g.*, *Comm'r, Dep't of Correction v. Freedom of Information Comm'n*, Nos. CV084016692S, CV094020945S, 2009 WL 4852114 (Conn. Super. Dec. 17, 2009) (ordering release of partially redacted record).

 *e. Statistical Reports.*  Although many key pieces of statistical data about the VGTOF have yet to be released to the public, and the public would benefit from more complete and updated data, the FBI's prior disclosures nevertheless demonstrate that release of statistical data does not categorically risk circumvention of the law.  For example, the government has released aggregate numbers of individuals in the VGTOF and the Consolidated Watchlist and data on error rates.[24]  Defendant's boilerplate explanation for its statistical withholdings refers only to geographic distribution of watchlist entries, but Plaintiff does not seek this particular data, and it appears that some of the statistics Defendant has withheld are not broken down by geographic region.[25]  Defendant also fails to explain how outdated statistical information would create a current risk of circumvention of the law.  *See, e.g.*, Hardy Decl. 153-54 (Dkt. No. 39-4) (using boilerplate language to claim that disclosure of 2002 statistics would "warn suspected terrorists that the FBI is aware of their plans.").

 *f. Terrorist Screening Center ("TSC")  Standard Operating Procedures ("SOPs").*  The SOPs include 191 pages, withheld in full, which may finally shed light on important issues, such as how the FBI decides which individuals in the Consolidated Watchlist will be nominated to the VGTOF.  These pages were withheld based solely on the explanation that some address "nomination criteria," *see supra*, and the conclusory statement that disclosure "would provide . . . a look inside the FBI's watchlisting 'playbook'" and "increase[] the risk that targets of investigations might avoid detection or might develop countermeasures so as to circumvent the FBI's ability to effectively use the important national security and watchlisting law enforcement

---

 [24] *See, e.g.*, note 7, *supra* (collecting citations); GAO Oct. 2007 Report, *supra* n.5, at 7-8; Mueller Testimony, *supra* note 21, at 72-73.
 [25] *E.g.* FBI Doc. 69 (NCIC-VGTOF-9197-9198, Dkt. No. 39-8); FBI Doc. 70 (NCIC-VGTOF-10025, Dkt. No. 39-8); *compare* Hardy Decl. 159-60 (Dkt. No. 39-4) *with* FBI Doc. 69, *supra* (including row labeled "Totals"); *compare* Hardy Decl. 161-62 (Dkt. No. 39-4) *with* FBI Doc. 70, *supra*.

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

techniques detailed in the SOPs."[26]  Defendant makes no attempt to describe the specific

contents, and its conclusory statements are belied by the fact that other documents describing the

"FBI's processes, procedures, techniques, and strategies pertaining to the watchlisting process"[27]

have been released.

g. *"[I]dentification and contents" of Databases.*  Although the nature of the particular

documents withheld here is unclear, Defendant has not adequately explained how disclosing

where data within these systems is recorded[28] would risk circumvention of agency regulations.

To the extent Defendant may argue that prior disclosures obviate the need for the

disclosures sought in this request, this argument is unavailing.  To begin, it appears likely that

much of the information withheld in this case would contribute significantly to the public's

current understanding of the VGTOF.  More importantly, an agency is not "relieved of an

obligation to disclose simply because information is publicly available elsewhere."  *Petroleum

Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1437 (D.C. Cir. 1992) (Ginsburg, J.).  For

all of the reasons above, the FBI has not demonstrated that release of the various categories of

material it seeks to withhold would "risk circumvention of the law."

Exemption 2 does not apply to many of the documents at issue for the additional reason

that they are not "predominantly internal."  First, courts have rejected attempts to use this

exemption to withhold brochures or memoranda reflecting communications with other

agencies.[29]  *See Sussman*, 494 F.3d at 1112-13; *El Badrawi*, 583 F. Supp. 2d at 316.  Second,

many of the documents at issue are "as important to the regulation of public behavior as if they

had been codified" and thus contain "secret law" not subject to Exemption 2.  *Milner*, 575 F.3d

---

[26] *See* Hardy Decl. 51-52 (discussing FBI Docs. 3, 4 and 5 (NCIC-VGTOF-8368-8396; NCIC-VGTOF-8397-8425; NCIC-VGTOF-8426-8455)) (Dkt. No. 39-2); *see also* Hardy Decl. 69-70 (discussing FBI Docs. 15, 16 and 17 (NCIC-VGTOF-10756-10793; NCIC-VGTOF-10794-10816; NCIC-VGTOF-10817-10858)) (Dkt. No. 39-2).

[27] *Id.*

[28] *See* Def.'s Mot. Summ. J. 16 (Dkt. No. 39).

[29] *E.g.*, FBI Doc. 8 (NCIC-VGTOF-10282-10283, Dkt. No. 39-7); FBI Doc. 21 (NCIC-VGTOF-10960-10961, Dkt. No. 39-7); FBI Doc. 22 (NCIC-VGTOF-10962-10963, Dkt. No. 39-7); FBI Doc. 89 (NCIC-VGTOF-10644, Dkt. No. 39-8); FBI Doc. 77 (NCIC-VGTOF-10128, Dkt. No. 39-8).

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

at 969 (citing *Crooker*, 670 F.2d at 1075)); *Hardy*, 631 F.2d at 657.  Entry in the VGTOF can result in deprivations of liberty, including prolonged traffic stops and detention.  *See* Facts, *supra*.  The public therefore has a due process right to notice of what behavior may result in a VGTOF entry.

**B. Exemption 7(E)**

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

First, Exemption 7(E) does not apply unless the agency establishes that disclosure of the materials at issue would risk "circumvention of agency regulation."  *Milner*, 575 F.3d at 966; *Bowen v. Fed. Dep't of Agric.*, 925 F.2d 1225, 1228 (9th Cir. 1991) (Exemption 7(E) applies where production "'would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law'") (ellipses in original); *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993) (requiring agency to establish that "releasing the withheld materials would risk circumvention of the law") (citing 5 U.S.C. § 552(b)(7)(E)).[30]  As discussed above, defendant has not met this burden.  *See supra*, Part II.A (Exemption 2).

---

[30] The "circumvention" requirement applies to law enforcement techniques and procedures as well as guidelines.  *See Bowen*, 925 F.2d at 1228-29 (applying "circumvention" requirement to disclosure of "cyanide-tracing techniques" used in tampering investigations); *see also Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1064 (3d Cir. 1995) ("Exemption 7(E) applies to law enforcement records which, if disclosed, would risk circumvention of the law"); *Benavides v. U.S. Marshal Serv.*, No. 92-5622, 1993 WL 117797, at *4 (5th Cir. Mar. 24, 1993) ("Exemption 7 provides that exemption is appropriate if the information 'could  reasonably be expected to risk circumvention of the law'") (citing  5 U.S.C. §  552(b)(7)(E)); *Dickerson v. Dep't of Justice*, 992 F.2d 1426, 1428 (6th Cir. 1993) (7(E) exempts law enforcement records "if they 'would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law'") (citing 5 U.S.C. § 552(b)(7)(E)) (ellipsis in original); *Catledge v. Mueller*, 323 Fed. App'x 464, 466-67 (7th Cir. 2009) (same).

Moreover, many of the documents at issue in this case do not even refer to "techniques and procedures." For example, the Defendant specifically describes the caveats the FBI issues to local law enforcement as "guidelines," a logical designation given the FBI does not control the actions of local law enforcement but can only

16

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

Second, Exemption 7(E) requires the agency to establish that the withholdings at issue are "law enforcement materials." *Milner*, 575 F.3d at 966. Moreover, "[n]o withholding under any of the exemptions listed in section 552(b)(7) is valid unless the withholding agency establishes a rational nexus between its law enforcement duties and the document for which Exemption 7 is claimed." *Wiener v. FBI*, 943 F.2d 972, 985 (9th Cir. 1991) (citations omitted). For purposes of the Exemption 7 analysis, contrary to the government's contention, documents discussing terrorism watchlists are not "compiled for law enforcement purposes." The primary purpose of the VGTOF, particularly its terrorism file, relates to intelligence rather than law enforcement. Indeed, the Ninth Circuit has described the contrary argument as one that "strain[s] the logical limits of 'law enforcement.'" *Milner*, 575 F.3d at 967 (criticizing *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1036 (N.D. Cal. 2005)).

Because the FBI has failed to establish either that disclosure would "risk circumvention of the law" or that the materials at issue are "law enforcement" materials, the Court should deny its motion for summary judgment as to Exemption 7(E).

## C. Exemption 5

Defendant next claims that several documents are exempt under the deliberative process privilege. Exemption 5 governs "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). It includes documents subject to the deliberative process privilege. *Lahr v. National Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009) (quotation omitted). To invoke this privilege, an agency must first show that document is "predecisional," meaning it is "prepared in order to assist an agency decisionmaker in arriving at his decision, and may include

---

advise them in their encounters with individuals on the list. *See, e.g.*, Def.'s Mot. Summ. J. 17 (Dkt. No. 39); Hardy Decl. 215 (Dkt. No. 39-4) ("specific guidelines for law enforcement when encountering a [VGTOF subject]."). Statistics or other types of data are similarly not "techniques and procedures." *See, e.g.*, FBI Doc. 69 (NCIC-VGTOF-9197-9198, Dkt. No. 39-8) (statistical report); Hardy Decl. 111 (discussing FBI Doc. 39 (NCIC-VGTOF-11738-11741)) (Dkt. No. 39-3) (map and statistics). And many other *Vaughn* indices do not provide enough information to determine whether they describe law enforcement guidelines, techniques, or procedures.

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id*. at 979-80 (quotation omitted).   Second, it must show that the document is "part of the deliberative process." *Id.*

Defendant first invokes this privilege to withhold large portions of a May 16, 2005 memorandum from the Office of Legal Policy ("OLP") Acting Assistant Attorney General to the Attorney General.[31]   But much of the redacted information from the 2005 memorandum is post-decisional.  The small amount of unredacted language on Bates pages 10094 to 10095[32] explains that four out of the five redacted recommendations were already implemented or in process of being implemented.

Second, the Defendant has failed to justify its invocation of the privilege as to several draft documents because it has not shown that the entirety of these documents reflect the deliberative process.[33]  This element of the privilege requires a showing that disclosure "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Lahr*, 569 F.3d at 979-80 (citation omitted).  The *Vaughn* indices shed little light on how disclosure of the particular documents at issue might affect the future discussion of ideas at the agency, and the indices do not identify "subjective opinions."  *NW. Envtl. Advocates v. U.S. EPA*, No. 05-1876, 2009 WL 349732, at *6 (D. Or. Feb. 11, 2009) (citing *Nat'l Wildlife Fed'n*, 861 F.2d at 1117); *see Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002) (requiring a showing that disclosure would frustrate the purposes of the privilege).

Contrary to the FBI's suggestion in its *Vaughn* indices, that a discussion occurs in a draft is not sufficient to establish deliberativeness.  *See, e.g., Fox News Network, LLC v. U.S. Dep't of*

---

[31] FBI Doc. 75 (NCIC-VGTOF-10094-10096, 10100, 10104, Dkt. No. 39-8).
[32] *Id.*
[33] FBI Doc. 19 (NCIC-VGTOF-10898-10907, Dkt. No. 39-7); FBI Doc. No. 25 (NCIC-VGTOF-11001-11005, Dkt. No. 39-7); FBI Doc. 29 (NCIC-VGTOF-11431-11440; Dkt. No. 39-7); , 30 (NCIC-VGTOF-11451-11467; Dkt. No. 39-7); FBI Doc. 43 (NCIC-VGTOF-10078-10079; Dkt. No. 39-7).

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

*the Treasury*, 678 F. Supp. 2d 162, 168 (S.D.N.Y. 2009) ("Treasury also appears to take it as an article of faith that a document labeled 'Draft' is automatically protected by the deliberative process privilege. That is not so."); *N.Y. Times Co. v. U.S. Dep't of Defense*, 499 F.Supp.2d 501, 515 (S.D.N.Y. 2007) ("[T]he mere fact that a document is a draft . . . is not a sufficient reason to automatically exempt it from disclosure.") (quotation omitted).  "While drafts often may be protected by the deliberative process privilege," an agency is "still obligated to provide" specific information such as that describing the documents' "'function and significance in the agency's decisionmaking process.'"  *Fox News Network*, 678 F. Supp. 2d at 168 (citing *N.Y. Times*, 499 F. Supp. 2d at 515).  Moreover, documents that were predecisional and deliberative when drafted lose the protection of the privilege if adopted as or incorporated by reference in the agency's final position.  *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356-57 (2d Cir. 2005).

Additionally, even if the privilege were to apply to any of these documents, by withholding them in full, it appears likely that the agency has not met its obligation to segregate non-deliberative facts.  *See, e.g., Pacific Fisheries*, 539 F.3d at 1149-50 (statement that agency attempted to segregate all factual portions of documents "too conclusory to meet the agency's burden").

### D.     Exemptions 6 and 7(C)

The FBI has improperly withheld non-identifying information under Exemptions 6 and 7(C).  These exemptions allow an agency to withhold information that, if disclosed, would constitute an unwarranted invasion of personal privacy.  Under Exemption 6, an agency may lawfully withhold from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Similarly, Exemption 7(C) authorizes an agency to withhold information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  In order for information to constitute an unwarranted invasion of a person's privacy the records must contain information "which can be

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602. Because the FBI has withheld information that cannot be identified as applying to any specific individual, its withholdings are improper.[34]

The FBI claims that disclosure of information regarding race, sex, country of birth, passport information, and criminal history "could, when combined with available information, identify the individuals mentioned in the NCIC database." Def.'s Mot. Summ. J. 26 (Dkt. No. 39). But even assuming the viability of this general theory, "the agency must provide the court enough information to reasonably conclude that *the instant case* implicates such a scenario." *El Badrawi*, 583 F. Supp. 2d at 319 (emphasis added); *see also Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice,* 331 F.3d 918, 940 (D.C. Cir. 2003) (Tatel, J. dissenting).

Defendant has not met this burden. Defendant's assertion that disclosure of information as general as that at issue here – particularly facts such as race, sex, country of birth, and passport country – could identify any particular individuals is unsubstantiated. *See, e.g., Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1058 n.4 (3d Cir. 1995) ("the privacy interest [under Exemption 7(C)] only extends to the individuals' names and street addresses, which need not be revealed, but not to cities, occupations, or other 'identifiers.'"). In addition, Defendant's claim that segregation of this information is unnecessary because it has no "meaning" standing on its own overlooks the fact that the summary judgment motion involves only a representative sample of withholdings. The disclosure of the race, sex, national origin, or passport country of a large number of individuals who have been entered in the VGTOF, for example, would permit the public a better understanding of how this database has been used. Thus, DOJ should be required to disclose information related to race, sex, country of birth, country of passport issuance, and criminal history information contained in documents responsive to Plaintiff's FOIA request.

**E.      Exemption 7(D)**

---

[34] Plaintiff does not seek disclosure of the redacted titles of FBI employees or the redacted name of a government contractor. *See* Def.'s Br. Summ. J. 24-25 (Dkt. No. 39).

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

Defendant has failed to meet its burden of proving that information was properly withheld under Exemption 7(D).  Exemption 7(D) authorizes agencies to withhold records or information compiled for law enforcement purposes that "could reasonably be expected to disclose the identity of a confidential source."  5 U.S.C. § 552(b)(7)(D); *see also Wiener v. FBI*, 943 F.2d 972, 986-87 (9th Cir. 1991).  Grants of confidentiality may be express or implied.  For the former, the agency must "establish the informant was told his name would be held in confidence."  *Wiener*, 943 F.3d at 986.  For the latter, the agency "must state the circumstances surrounding the receipt of information which led the FBI to conclude the informant would not have given the information without an implicit assurance of confidentiality." *Id.* at 987.

Exemption 7(D) also authorizes agencies to withhold "information furnished by a confidential source" if such information was "compiled by a criminal law enforcement authority in the course of a criminal investigation."  5 U.S.C. § 552(b)(7)(D).  In order to establish that information furnished by a confidential source was "compiled in the course of a criminal investigation" and is therefore exempt from disclosure, an agency must "identify [1] a particular individual or a particular incident as the object of its investigation and [2] the connection between that individual or incident and a possible . . . violation of federal law."  *Shaw v. FBI*, 749 F.2d 58, 63) (D. C. Cir. 1984).  Plaintiff contests the withholding of two of the three types of information DOJ seeks to withhold under Exemption 7(D).  *See* Def.'s Mot. Summ. J. 21.

**1. Information provided by a foreign government agency.**  DOJ has improperly withheld non-identifying information included in Document 27 (NCIC-VGTOF-11095-11002, Hardy Decl. 88-89).  DOJ has withheld this eight-page document in its entirety, arguing that it was provided by a foreign government agency under assurances of confidentiality.  Yet even if the information was provided under assurances of confidentiality, DOJ may only properly withhold information that "could reasonably be expected to disclose the *identity* of a confidential source." 5 U.S.C. § 552(b)(7)(D) (emphasis added).  FOIA does not authorize DOJ to withhold

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2646

non-identifying information provided by the confidential source unless it was "compiled by criminal law enforcement authority in the course of a criminal investigation."  *Id.*

The FBI has not established that the information was compiled in the course of a criminal investigation because it has not identified any "particular individual or a particular incident as the object of its investigation," nor has it described the connection between the withheld document and any investigation.  *Shaw*, 749 F.2d at 63.  On the contrary, according to the FBI's own description, the document relates very generally to law enforcement and refers to "facilitat[ing] the exchange of ideas and the development of common standards and solutions to promote the interoperability of law enforcement data systems in connection with law enforcement investigations."  Hardy Decl. 88 (Dkt. No. 39-3).  Because the withheld information was not compiled in the course of a criminal investigation, FOIA requires DOJ to disclose all non-identifying information in Document 27 even if obtained under assurances of confidentiality.

*2. Information provided by state and local law enforcement agencies.*  Defendant has improperly withheld information provided by state and local law enforcement agencies regarding alleged misuse of VGTOF information because it has not shown that confidentiality should be inferred regarding these communications.  The FBI's claim that there existed implied assurances of confidentiality because "the FBI relies heavily upon the state and local agencies to furnish the information that populates the database," Def.'s Mot. Summ. J. 22, explains only why the FBI would benefit from the agencies being treated as confidential sources rather than meeting 7(D)'s requirement of explaining why the Court should infer there existed an implied agreement of confidentiality between the agency and the informant at the time the information was furnished. *See U.S. Dept. of Justice v. Landano*, 508 U.S. 165, 174 (1993); *see also Wiener*, 943 F.2d at 986-87.  Accordingly, Defendant should be required to disclose information provided by law enforcement agencies regarding alleged misuses of VGTOF information.  In the alternative, Defendant should be required to specify the circumstances supporting an inference of confidentiality in its *Vaughn* index.

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

### F.  Exemption 1

The FBI has not provided sufficient specificity in its *Vaughn* index regarding its withholdings under Exemption 1.  A *Vaughn* index for Exemption 1 withholdings is insufficient if it does not provide enough information "to enable the requester to contest the withholding agency's conclusion that disclosure will result in damage to the nation's security."  *Wiener*, 943 F.2d at 980.  The index must, therefore, provide a logical link between the agency's general concerns about disclosure of a category of information with the specific information withheld in a particular case.  *See id.* at 981.

The impenetrable language of Defendant's *Vaughn* index makes it impossible to evaluate whether the withheld information was properly classified under Executive Order 12,958 and is therefore exempt from disclosure under Exemption 1.[35]  DOJ attempts to justify its Exemption 1 withholdings through the use of vague and disjointed explanations, using identical language for different withholdings.[36]  According to this boilerplate language, the withheld information "relates to unique record identifier and standard terminology/phraseology used by the FBI." *E.g.,* Hardy Decl. 183-84, 186-87, and 189-90 (Dkt. No. 39-4).  While Plaintiff does not contest withholding of unique numbers linked to only a single VGTOF record, the particular information withheld here is unclear.  Moreover, Defendant's contention that disclosure of mere terminology would "reveal the limitations of the FBI's efforts *in a particular intelligence investigation* and/or the amount of resources or efforts the FBI is willing to expend on *this particular matter*," *e.g.*, *id.* at 184 (emphasis added), is illogical since Plaintiff is not seeking and has not received the names of any individual investigative subjects.  Moreover, Defendant has not provided a sufficiently

---

[35] Exemption 1 authorizes agencies to withhold information or documents that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  The relevant executive order, Executive Order No. 12,958, specifies that information may be classified only if "the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security . . . and the original classification authority is able to identify or describe the damage."  Exec. Order No. 12,958, 60 Fed. Reg. 19,825 (Apr. 17, 1995), *reprinted as amended in* 68 Fed. Reg. 15,315 (March 28, 2003).

[36] The single Exemption 1 withholding explained by the Department of State does not use this language and is not contested here.

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

specific explanation to support its claim that disclosing "standard terminology/phraseology" in multiple cases would somehow permit "wrongdoers" to use this information "against the FBI." *E.g.*, *id.*; *see Nat'l Security Archive v. FBI,* 759 F. Supp. 872, 879 (D. D.C. 1991) (mere assertion that disclosure of "standard terminology" would reveal the "depth" of FBI's intelligence did not justify exemption).

The other explanation included in the Exemption 1 *Vaughn* indices is likewise insufficient because it merely parrots the disjunctive language of Executive Order 12,958 – stating that disclosure "would reveal actual intelligence activities . . . *or* cryptology utilized by the FBI . . . *or* disclose classified procedures and methods of intelligence gathering" – without tying these standards to the particular documents at issue.  *E.g.*, Hardy Decl. 183-84, 186-87, 189-90 (Dkt. No. 39-4) (emphasis added); *see Wiener* 943 F.2d at 977-78, 981; *see also King v. Dep't of Justice*, 830 F.2d 210, 223-24 (D.C. Cir. 1987).

The Court should therefore require the FBI to produce the documents withheld under Exemption 1, or in the alternative to provide a more detailed *Vaughn* index.

### G.     The Defendant Should be Required to Produce the Information it has Withheld, or in the Alternative to Produce the Withheld Records for *In Camera* Review.

Because Defendant has not met its burden with regard to the claimed exemptions, the Court should deny its motion for summary judgment and grant summary judgment for Plaintiff. Although Defendant has offered to submit an *in camera* affidavit to provide more detail on the documents withheld, an affidavit that is not available for Plaintiff's review would frustrate the adversarial system and undermine the purposes of FOIA, while still not giving even the Court a meaningful opportunity to consider the documents at issue.  *See Wiener*, 943 F.2d at 977-78; *John Doe Corp. v. John Doe Agency*, 850 F.2d 105, 110 (2d Cir. 1988), *rev'd on other grounds*, 493 U.S. 146 (1989) (explaining that FOIA expressly authorizes *in camera* review of requested

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

documents, but not of interrogatory answers). Moreover, the parties' sampling procedure has ensured that *in camera* review of the documents withheld would be feasible in this case.[37]

III.     **Plaintiff's Request Qualifies for a Fee Waiver.**

Plaintiff has recently paid $100 in processing fees as it agreed in its request,[38] but the FBI is not entitled to assess additional duplication fees for this request.

### A. Defendant has waived its ability to charge duplication fees

Defendant has waived its ability to charge duplication fees because it failed to adjudicate the fee waiver request within the statutory time limit.  The FBI failed to adjudicate Plaintiff's request for a fee waiver for nearly a year despite being required to respond to Plaintiff's FOIA request within 20 days.  5 U.S.C. § 552(a)(6)(A)(i).  By failing to act on Plaintiff's request, Defendant waived its ability to charge fees.  *See Lawyers' Comm. for Civil Rights of San Francisco Bay Area v. U.S. Dep't of Treasury*, No. C 07-2590 PJH, 2009 WL 2905963, at *1 (N.D. Cal. Sept. 8, 2009); *see also* Fee Waiver Appeal, Ex. F to Hardy Decl., at 1 (Dkt. No. 39-6).

### B. The Request Qualifies for a Public Interest Fee Waiver.

Moreover, even if the FBI had not waived its ability to collect fees, the request qualifies for a waiver of duplication fees under FOIA's public interest fee waiver clause because it plainly sought information that is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii).  As a preliminary matter, Defendant has conceded that Plaintiff "appear[s] to have no overriding commercial interest in the material."  Fee Waiver Denial, Ex. D to Hardy Decl., at 2 (Dkt. No. 39-6).

---

[37] *See, e.g.*, *Peltier v. FBI*, 563 F.3d 754, 758 (8th Cir. 2009) (approving district court's *in camera*  review of 500-page representative sample); *Jones v. F.B.I.*, 41 F.3d 238, 243-44 (6th Cir. 1994) (approving *in camera* review of "manageable sample" of responsive documents approved by trial court comprised of 553 pages, including both documents selected by plaintiff and at random); *Ash Grove Cement Co. v. FTC*, 511 F.2d 815, 818 (D.C. Cir. 1975) (ordering *in camera* review of representative sample of documents to verify validity of agency's withholdings).

[38] See Letter from ACLU to FBI (July 26, 2010), Anello Decl. Ex. H, at 112-13.

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

Plaintiff's FOIA request is likely to contribute to public understanding of government activities because (1) the requested records concern the "operations or activities of the government," (2) the records are "meaningfully informative" about government activities and thus likely to contribute to an "increased public understanding" of those activities, (3) disclosure will contribute to the understanding of a "reasonably broad audience of persons interested in the subject," and (4) the public's understanding of the subject of the records will be "enhanced by the disclosure to a significant extent." 28 C.F.R. § 16.11(k)(2).

*First*, Plaintiff's FOIA request plainly falls within the scope of "operations or activities of the government," because it seeks information on the operation and maintenance of a massive database maintained and utilized by the government.

*Second*, the records requested are "meaningfully informative" and likely to contribute to an "increased public understanding" of the operation and maintenance of the VGTOF. The public's interest in information regarding the VGTOF is high. As discussed above, the VGTOF includes hundreds of thousands of individual records and has a high rate of error. Inclusion in this database carries serious ramifications such as prolonged traffic stops and arrest. Yet the government refuses to inform individuals whether they are entered in the database and has no procedure for individuals to request deletion or correction of incorrect records. Given its interest in national security, the public also has a serious interest in learning more about the VGTOF's accuracy and effectiveness. Release of more detailed information about the VGTOF – including, for example, how its nomination process is implemented, how records are modified or deleted, database errors, and how individuals in the database have been affected – significantly enhances public understanding of this rapidly expanding system.

Defendant's argument that the requested information will not contribute to "an increased public understanding" because certain documents about the VGTOF were previously in the public domain is unavailing. *See* Def.'s Mot. Summ. J. 29 (Dkt. No. 39). Most of the documents produced were not public prior to Plaintiff's request. Moreover, even requests including

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

documents already in the public domain will contribute to "increased public understanding" where the requester is uniquely positioned to process, interpret, and disseminate this information. *See Center for Medicare Advocacy, Inc. v. U.S. Dep't of Health and Human Services*, 577 F. Supp. 2d 221, 241-42 (D.D.C. 2008).  Plaintiff and its co-requesters have particular expertise in compiling, analyzing and evaluating complex government records and providing written material for the public in accessible format.  *See* Fee Waiver Appeal, Ex. F to Hardy Decl., at 5-6 (Dkt. No. 39-6).   Finally, at minimum, this argument does not address Plaintiff's entitlement to a fee waiver in connection with documents that had not previously been released.

  *Third*, Plaintiff's FOIA request will contribute to the understanding of a "reasonably broad audience" regarding the maintenance and operation of the VGTOF because of Plaintiff's well-established capacity to disseminate information to large audiences.  The ACLU–including both the national office and the affiliated ACLU of Washington–have expertise in distributing information to broad audiences.  The national ACLU has over 500,000 members and supporters, and the ACLU of Washington has 25,000 active members.  Both parts of this federated organization have particular capacity to disseminate information to the general public via its websites, newsletters, published reports, and extensive media contacts.  *See* Fee Waiver Appeal, Ex. F to Hardy Decl., at 7-9 (Dkt. No. 39-6); *see, e.g.*, ACLU of Washington, Public Documents, http://www.aclu-wa.org/public-documents.  The ACLU and ACLU of Washington also qualify as "news media" requesters because they frequently publish and distribute information, and are therefore entitled to a presumption that information they request is likely to reach a reasonably broad audience.[39]  Fee Waiver Appeal, Ex. F to Hardy Decl., at 7 (Dkt. No. 39-6); 28 C.F.R. § 16.11(d)(1); Letter from U.S. Dep't of Commerce to ACLU (May 3, 2005), Fee Waiver Appeal Ex. C (Dkt. No. 39-6).

  Defendant argues that Plaintiff's argument in its fee waiver appeal was "misguided" because "the requester here is not the national ACLU office, but ACLU of Washington."  Def.'s

---

[39] Defendant has provided no evidence controverting this assertion. *See* Def.'s Mot. Summ. J. 27, n.17 (Dkt. No. 39).

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

Mot. Summ. J. 30 (Dkt. No. 39).  But the ACLU Immigrants' Rights Project, part of the national office, was one of the original requesters, and accordingly would participate in disseminating the information requested.  FOIA Request, Ex. A to Hardy Decl., at 1 (Dkt. No. 39-6).  In addition, the ACLU is a federated organization in which the affiliate offices—here ACLU of Washington—work in close collaboration with the national office.  Finally, the ACLU of Washington alone has over 25,000 members, has its own website, and distributes its own newsletters and "Action Alerts."

*Fourth*, Plaintiff's FOIA request would "significantly" contribute to public understanding of government activities by exposing crucial information regarding the VGTOF to which the public has not previously had access.  The FBI's vague contention that Plaintiff's FOIA request would not "significantly" contribute to public understanding of government activities because some responsive documents consisted of internal administrative information is without merit. Def.'s Mot. Summ. J. 28 (Dkt. No. 39).  Defendant does not identify any particular information it considers to be "administrative," and much "administrative" information—in particular with regards to the administration of the VGTOF—is of significant interest to the public.  Moreover, that responsive materials include both substantive and non-substantive information does not preclude eligibility for a fee waiver.  *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 36 (D.C. Cir. 1998) (presence of administrative material within files that also contain substantive documents does not justify charging fees for copying non-substantive clutter).  Last, eligibility for a fee waiver is to be determined *ex ante* and "should be evaluated based on the face of the request and the reasons given by the requester in support of the waiver."  *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994); *see Citizens for Responsibility and Ethics in Gov't v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 125 (D.D.C. 2009).  Plaintiff's request plainly sought information that would significantly contribute to public understanding.

Because Plaintiff meets all of the criteria set forth in 28 C.F.R. § 16.11(k)(2), it is eligible for a public interest fee waiver.

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

**CONCLUSION**

Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment and grant summary judgment *sua sponte* to Plaintiff.  In the alternative, Plaintiff respectfully requests *in camera* review of the documents that have been withheld or redacted.

Dated:  July 30, 2010

Respectfully submitted,

/s/ Lee Gelernt

Lee Gelernt,* State Bar No. NY-8511
Farrin R. Anello,* State Bar No. NY-4403952
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 549-2619
lgelernt@aclu.org
fanello@aclu.org

Michael Wishnie,* Supervising Attorney,
State Bar No. CT27221
ALLARD K. LOWENSTEIN
INTERNATIONAL HUMAN RIGHTS CLINIC
NATIONAL LITIGATION PROJECT
Yale Law School
127 Wall Street
New Haven, CT 06511
Tel. (203) 432-4800
michael.wishnie@yale.edu

Sarah A. Dunne, WSBA #34869
M. Rose Spidell, WSBA #36038
901 Fifth Avenue, Suite 630
Seattle, WA 98164
Tel. (206) 624-2184
dunne@aclu-wa.org
spidell@aclu-wa.org

Counsel for Plaintiff

*Admitted *pro hac vice.*

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616

**CERTIFICATE OF SERVICE**

I, Hannah Robbins, declare as follows:

I am employed in the City, County and State of New York, in the office of the counsel at whose direction the following service was made. I am over the age of eighteen years and am not a party to the within action. My business address is the American Civil Liberties Union Foundation, Immigrants' Rights Project, 125 Broad Street, 18th Floor, New York 10004.

On the 30th day of July, 2010, the foregoing Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, the attached Declarations of Farrin Anello and Shana Khader, and the exhibits attached thereto were filed electronically through the Western District of Washington CM/ECF system.  I declare under penalty of perjury under the laws of the State of New York that the above is true and correct.

Dated: July 30, 2010

/s/ Hannah Robbins
Hannah Robbins

Plf.'s Mem. Opp. Def.'s Mot. for Summ. J.
Case No. C09-642RSL

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor, NY, NY 10004
(212) 549-2616