1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                        )
AMERICAN CIVIL LIBERTIES UNION          )      No. C09-0642RSL
OF WASHINGTON,                          )
                                        )
                   Plaintiff,           )
                                        )
       v.                               )      ORDER GRANTING IN PART
                                        )      DEFENDANT'S MOTION FOR
U.S. DEPARTMENT OF JUSTICE,             )      SUMMARY JUDGMENT AND
                                        )      ORDERING PRODUCTION OR
                   Defendant.           )      SUPPLEMENTATION OF VAUGHN
_____ )      INDEX

       This matter comes before the Court on defendant's "Notice of Motion and Motion

for Summary Judgment."  Dkt. # 39.  This case involves a request for information under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and highlights the tension between the

government's need to protect the homeland, with its concomitant need for secrecy and

confidentiality, and the public's interest in understanding how the government exercises its

extraordinary powers toward that goal.  As a general matter, the courts are not well-suited to run

executive branch functions, including law enforcement activities and the terrorist watch list.

Courts are, however, capable of determining whether a party is in compliance with the law, and

that is the issue presented here.  Having reviewed the memoranda and exhibits submitted by the

parties, the Court finds as follows:

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

# BACKGROUND

On December 19, 2008, plaintiff submitted a FOIA request for records describing the operation and maintenance of the National Crime Information Center ("NCIC") Violent Gang and Terrorist Organization File ("VGTOF").  Plaintiff indicated that it was willing to pay up to $100 in copying costs and requested that any additional fees be waived.  Defendant timely notified plaintiff that it had located responsive documents, but that the estimated duplication costs exceeded the amount plaintiff was willing to pay.  When plaintiff did not respond – plaintiff maintains that it never received the notification letter – defendant put plaintiff's FOIA request aside without addressing plaintiff's application for a waiver of fees.

In May 2009, plaintiff filed this action to compel production of the requested documents.  On November 17, 2009, defendant denied plaintiff's request for a fee waiver and renewed its processing of plaintiff's FOIA request.  Defendant has identified 13,088 pages of responsive documents, as well as two cassette tapes and a DVD that are also responsive, but has determined that 425 pages are exempt from disclosure under FOIA in their entirety, with another 4,952 pages and the DVD subject to redactions.[1]  The parties have agreed to proceed to summary judgment based on a representative sample of the withheld documents.  Defendant has provided a description of 127 withheld documents or portions thereof and a statement regarding why the materials are exempt from production under FOIA.  Defendant seeks a determination that it properly withheld records, that it reasonably segregated exempt portions and produced that which was feasible, and that plaintiff must pay $1,274.60 in copying costs associated with the production.[2]

---

[1]  During the course of briefing this summary judgment motion, defendant reevaluated the exemptions claimed for certain documents.  While the numbers in the text are no longer accurate, they provide a general sense of the magnitude of the dispute between the parties.

[2]  Plaintiff does not dispute the adequacy of defendant's search for responsive documents. Defendant is therefore entitled to summary judgment on that issue.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    -2-

**DISCUSSION**

**A. FREEDOM OF INFORMATION ACT AND THE VAUGHN INDEX**

FOIA represents a balance "between the right of the public to know and the need of the Government to keep information in confidence." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (quoting H.R. Rep. No. 1497, at 6 (1966), reprinted in 1966 U.S.C.C.A.N. 2418, 2423).  In enacting FOIA, Congress clearly recognized that "legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." Fed. Bureau of Investigation v. Abramson, 456 U.S. 615, 621 (1982).  In order to foster the public disclosure objective of the statute, the exemptions are narrowly construed and the burden is on the agency to show that a document was properly withheld. Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976); 5 U.S.C. § 552(a)(4)(B).

Because only the agency has access to the withheld documents, plaintiff is at a significant disadvantage when arguing the applicability of statutory exemptions.  The courts therefore require agencies to provide a "Vaughn index"[3] that identifies each withheld document, the applicable exemption, and "a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." Wiener v. Fed. Bureau of Investigation, 943 F.2d 972, 977 (9th Cir. 1991).  The purposes of the index are to provide plaintiff with an adequate foundation to challenge, and the Court an adequate basis to review, the soundness of the withholding:  in effect, it is designed to restore the traditional adversary nature of our judicial process despite plaintiff's lack of access to the documents. Id. at 977-78; Vaughn, 484 F.2d at 828.

If an agency asserts that an exemption applies to a particular document, the Court

---

[3]  Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

1  will presume that the agency is operating in good faith.  Affidavits offered in support of the

2  claimed exemption will be given full faith and credit "provided the justifications for

3  nondisclosure are not controverted by contrary evidence in the record or by evidence of [agency]

4  bad faith."  Minier v. Central Intelligence Agency, 88 F.3d 796, 800 (9th Cir. 1996) (internal

5  quotation marks omitted).  The affidavits must, however, provide individualized information

6  regarding each document in order to justify withholding.  Where the Vaughn index lacks

7  specificity and the affidavits provide only "boilerplate" explanations for why whole categories of

8  documents should be exempt from disclosure without attempting to show that the revelation of

9  the particular document at issue threatens the interest protected by the claimed exemption,

10  neither the adversary process nor the Court can perform its function.  Wiener, 943 F.2d at 978-

11  79.  With these principles in mind, each of the claimed exemptions is discussed below.

12  **B. EXEMPTION 1**

13        FOIA does not require production if the document discloses matters that are

14  "(A) specifically authorized under criteria established by an Executive order to be kept secret in

15  the interest of national defense or foreign policy and (B) are in fact properly classified pursuant

16  to such Executive order."  5 U.S.C. § 552(b)(1).  The FBI has withheld all or parts of six

17  documents under Exemption 1 (Document Nos. 79, 80, 81, 84, 100, and 124).

18        Defendant argues that the six documents withheld under Exemption 1 meet the

19  criteria of Executive Order 12958, which allows information to be classified as national security

20  information if:

21        (1) an original classification authority is classifying the information;

22        (2) the information is owned by, produced by or for, or is under the control of the
          United States Government;

23

24        (3) the information falls within one or more of the categories of information listed
          in section 1.4 of this order; and

25

26

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT        -4-

1

2

3

(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

4   Executive Order No. 12958 § 1.1(a).  Plaintiff does not contest the first two elements of

5   Executive Order No. 12958, but argues that the information provided in the Vaughn index and

6   the accompanying affidavit are insufficient to establish that the information deemed classified

7   falls withing § 1.4 or that its release reasonably could be expected to damage national security.

8          The agency offers the Declaration of David M. Hardy, the Section Chief of the

9   FBI's Record/Information Dissemination Section, in support of the claimed exemption.  Mr.

10   Hardy states that the withheld materials reflect "intelligence activities (including special

11   activities), intelligence sources or methods, or cryptology," as set forth in Executive Order No.

12   12958 § 1.4(c).  Decl. of David M. Hardy (Dkt. # 39) at 16.  Mr. Hardy asserts that the

13   information is exempt because its disclosure would reveal (1) the actual intelligence activities

14   utilized by the FBI against counterintelligence targets or (2) the limits of those intelligence

15   gathering activities.  Decl. of David M. Hardy (Dkt. # 39) at 16-17.  Such disclosures are to be

16   avoided, Mr. Hardy tells us, because once hostile entities know which intelligence activities are

17   used by the FBI and the effort the FBI is putting into a particular investigation, they could

18   develop countermeasures to thwart the FBI's investigations.  Decl. of David M. Hardy (Dkt.

19   # 39) at 17.

20          Taking Document No. 79 as an example, it is not clear what intelligence activities

21   are described in this one-page email between Terrorist Screening Center ("TSC") personnel.

22   The email transmits an undisclosed attachment and laments that, despite having requested input

23   from DOJ regarding the attached document, DOJ has been unwilling to green light the

24   document.  Most of the redactions seem to be employee names, the withholding of which

25   plaintiff does not contest.  It is hard to imagine what intelligence activities or limitations are

26

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -5-

hidden in the other redacted sections, and neither Mr. Hardy's declaration nor the "Summary and Justification of Deleted Information" provides the answer.  The declaration says that all of the documents withheld under Exemption 1 contain information regarding either "the actual intelligence activities utilized by the FBI against specific targets of foreign counterintelligence investigations or operations" or "the intelligence gathering capabilities of the activities directed at specific targets."  Decl. of David M. Hardy (Dkt. # 39) at 16.  Such weighty matters seem well beyond the scope of this one-page procedural email.  The "Summary and Justification" offered for Document No. 79 simply repeats, in truncated fashion, the substance of Mr. Hardy's declaration.  The <u>Vaughn</u> index summarizes Document No. 79 as "[o]ne-page e-mail dated February 13, 2009 between TSC personnel regarding the new caveats and other TSC issues." Neither the description nor the disclosed portions of Document No. 79 suggests that actual intelligence activities or capabilities are discussed.  The claimed exemption is justified without reference to the document:  in fact, the justification section is virtually identical to the justifications provided for Document Nos. 80, 81, 84, 100, and 124.[4]  Absent some effort to tailor the explanation to the specific document withheld, neither plaintiff nor the Court is able to evaluate the merits of the redaction.  The FBI has, in effect, parroted the language of the Executive Order (in the disjunctive) and declared that the redacted information falls within one or more of the categories covered by the order.  This categorical approach is "clearly

---

[4]  Defendant argues that cutting and pasting is appropriate because the "information withheld in some documents is similar (if not identical) in nature to information contained in other documents in the sample."  Reply (Dkt. # 43) at 1.  As far as the Court can discern, the fact that all six (b)(1) documents are covered by the same "justification" is more a function of the generality of Mr. Hardy's description of the classified material than of any similarities between the documents or the information contained therein.  The fact that all six documents contain information regarding "intelligence activities" or "intelligence gathering capabilities" tells us very little about an individual document, whether it is properly withheld, and/or whether its disclosure would harm national security.  A review of the documents themselves suggests that the information contained therein varies, but whether the differences are significant for purposes of the Exemption 1 analysis cannot be determined.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -6-

1   inadequate."  <u>Wiener</u>, 943 F.2d at 978-79 (quoting <u>King v. Dep't of Justice</u>, 830 F.2d 210, 218

2   (D.C. Cir. 1987)).

3          Mr. Hardy also states that the FBI has redacted "information which relates to

4   unique record identifier and standard terminology/phraseology used in the most recent FBI

5   investigations."  Decl. of David M. Hardy (Dkt. # 39) at 17.[5]  It is not clear from the declaration

6   how terminology/phraseology fall within Executive Order No. 12958.  They do not appear to be

7   intelligence activities, sources, or methods, nor does Mr. Hardy indicate that "standard

8   terminology/phraseology" involves encryption or other conversion from ordinary text.  Even if

9   the Court assumes for purposes of this motion that the terms and phrases constitute "cryptology"

10  for purposes of § 1.4, the FBI has not provided enough information from which the Court could

11  conclude that each of the withheld documents contains classified terminology/phraseology or

12  that its release, in the absence of unique record identifiers, could reasonably be expected to

13  damage national security.  Mr. Hardy states that the disclosure of "standard terminology/

14  phraseology as well as unique record identifiers" could allow investigation targets to thwart

15  agency investigations:  he says nothing about what could be divined from the disclosure of

16  terminology/phraseology standing alone.

17         In addition to the six documents withheld by the FBI, the State Department has

18  reviewed Document No. 66 and determined that the disclosure of certain information contained

19  therein could damage national security.  Approximately two lines of text were classified under

20  Executive Order No. 12958 § 1.4(c) and § 1.4(d).[6]  Margaret P. Grafeld, the Acting Deputy

21  Assistant Secretary for Global Information Services at the Department of State asserts that the

22

23         [5] Plaintiff does not contest the redaction of unique record identifiers – its interest in the VGTOF
    centers on how the database works and where error creeps into the system rather than on the details of
24  any individual's or organization's file.

25         [6] Section 1.4(d) permits agencies to classify information concerning "foreign relations or foreign
    activities of the United States, including confidential sources."
26

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -7-

redacted information relates to intelligence-sharing with foreign governments and that its disclosure could damage U.S. foreign relations.  Plaintiff does not contest the withholding of this document.

**C. EXEMPTION 2**

Section 552(b)(2) of FOIA exempts from disclosure matters that are "related solely to the internal personnel rules and practices of an agency."  This provision covers "the rules and practices dealing with employee relations or human resources."  Milner v. Dep't of the Navy, No. 09-1163, slip op. at 7 (U.S. March 7, 2011).  Defendant concedes that the investigative techniques and guidelines it has withheld do not fall within this limited exemption.[7]

**D. EXEMPTION 5**

Exemption 5 protects from disclosure those documents which would be subject to a privilege in the civil discovery context, including the deliberative process privilege.  Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); Lahr v. Nat'l Transp. Safety Bd., 569 F.3d 964, 979 (9th Cir. 2009).

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.

Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001) (internal citations and quotation marks omitted).  To fall within this privilege, a document must be both

---

[7] Until very recently, Exemption 2 had been interpreted to protect not only rules and practices governing day-to-day employment matters within the agency, but also materials (a) that are predominantly internal and (b) the disclosure of which would present a risk of circumvention of agency regulation.  Milner v. Dep't of the Navy, 575 F.3d 959, 965 (9th Cir. 2009).  The Supreme Court substantially narrowed the scope of Exemption 2 on March 7, 2011, when it reversed the Ninth Circuit's "high 2" analysis.  Because the effect of the requested disclosure on the agency's ability to regulate is also a consideration under Exemption 7(E), the Court has addressed the parties' arguments regarding "risk of circumvention" in that section.

pre-decisional (*i.e.*, prepared to assist an agency decisionmaker in arriving at a decision) and deliberative (*i.e.*, reflects a candid discussion within the agency regarding how to perform its functions).  Lahr, 569 F.3d at 979.

The FBI has withheld six documents, in whole or in part, under Exemption 5.  Two of the documents (Nos. 43 and 75) discuss various proposals for how to respond to attempts by persons on the watchlist to purchase firearms.  The fact that the FBI was already making changes to its procedures when Document No. 75 was written does not preclude a finding that these documents were pre-decisional.  Mr. Hardy states that these proposals were made in the course of obtaining a final administrative decision from the Attorney General, and there is no evidence in the record that contradicts this assertion.  The other four documents (Nos. 19, 25, 29, and 30) are drafts that do not reflect final agency decisions and, according to Mr. Hardy, are integral parts of an on-going decision-making process within the agency.

**E. EXEMPTION 6**

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Plaintiff does not seek disclosure of the names, contact information, or titles of law enforcement personnel or the government contractors.  Decl. of David M. Hardy (Dkt. # 39) at ¶ 22; Opposition (Dkt. # 40) at 20.  There does not appear to be any dispute regarding the redactions of the types of information protected by Exemption 6.

**F. EXEMPTION 7(C)**

FOIA does not require the disclosure of information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  In order for disclosure to constitute an unwarranted invasion of personal privacy, the information at issue must be identifiable as applying to a particular individual.  Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982).  Plaintiff agrees that

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -9-

certain information, such as name, address, date of birth, height, weight, eye color, social security number, and database identifier number, need not be disclosed because it would identify specific individuals.  Decl. of David M. Hardy (Dkt. # 39) at ¶ 22.  It argues, however, that more generic information – namely race, sex, country of birth, passport country, and criminal history – can be disclosed without invading the privacy interests of the target.

The parties generally agree that identifying information is exempt from disclosure: they simply disagree regarding how many categories of information should be redacted to ensure that the target will not be identified.  Having reviewed the declarations provided and the documents discussed by the parties, the Court finds that descriptors that apply to whole populations, such as race, sex, country of birth, and passport country, are not reasonably likely to identify any particular individual.  Other information, such as criminal history, telephone number, and license plate number, could be combined with publicly available information to identify an individual and may therefore be redacted under Exemption 7(C).[8]  Defendant has not provided any evidence regarding the documents at issue or the surrounding production that would justify a more stringent privacy analysis in this case.

**G. EXEMPTION 7(D)**

Information compiled for law enforcement purposes that could reasonably be expected to disclose the identity of a confidential source or the information provided by that source is protected under Exemption 7(D).  Confidential sources include "a State, local, or

---

[8]  One of the documents withheld under Exemption 7(C) is Document No. 33, which is made up of two pages of a larger document.  The inclusion of partial documents in the Vaughn index is not particularly helpful.  In order to determine whether disclosure is appropriate under FOIA, the Court must understand the context in which documents were written and exemptions are asserted.  Chopping the documents up and presenting only the heavily redacted (or entirely withheld) pieces deprives the Court of potentially valuable information regarding unredacted text, dates, formatting, *etc*.  This practice not only disadvantages plaintiff and the Court, it occasionally makes it difficult for defendant to justify a claimed exemption.  In this case, defendant ultimately discovered that the missing pages related to Document No. 33 had to be produced in order to explain why the document was withheld in its entirety.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -10-

foreign agency or authority or any private institution which furnished information on a confidential basis . . . ."  5 U.S.C. § 552(b)(7)(D).  A source is considered confidential if it were expressly told that its identity would be held in confidence or if the circumstances surrounding the receipt of information suggest that the informant would not have provided the information without an implicit assurance of confidentiality.  Wiener, 943 F.2d at 986-87.

The FBI has withheld Document No. 27 in its entirety because the information was provided by a foreign government under express and implied assurances of confidentiality.  In such circumstances, Exemption 7(D) authorizes the redaction of information that would identify the source, but not the substance of the information provided.  The FBI has not alleged, much less shown, that the information was compiled "in the course of a criminal investigation" or "lawful national security intelligence investigation."  5 U.S.C. § 552(b)(7)(D).  There being no evidence that the FBI was investigating a particular individual or incident when it sought and/or obtained this information (Shaw v. Fed. Bureau of Investigation, 749 F.2d 58, 63 (D.C. Cir. 1984)), defendant has failed to justify the nondisclosure of the information provided by the confidential source under Exemption 7(D).[9]

Document Nos. 116-120 are letters from the FBI to other law enforcement agencies identifying possible unauthorized uses of the VGTOF database and requesting an investigation.  Taking Document No. 118 as an example, the FBI asserts that it has redacted "the identity of and the information provided by a state law enforcement agency under an implied assurance of confidentiality."  Decl. of David M. Hardy (Dkt. # 39) at 258.  This assertion is

---

[9]  In his supplemental declaration, Mr. Hardy attempts to link Document No. 27 to a particular criminal investigation by asserting that the foreign source was sharing "techniques and information used to facilitate criminal investigations with respect to different law enforcement data systems which reference specific individuals."  Dkt. # 43, Ex. 1 at ¶ 9.  Communications regarding investigative techniques do not necessarily arise "in the course of a criminal investigation," and Mr. Hardy's generalized assertions do not establish the necessary link.

The Court has not separately considered defendants' Exemption 2, 5, and 7(E) assertions, raised for the first time in reply, regarding Document No. 27.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -11-

factually and legally unsupported.  The source of the information regarding the possible

unauthorized access has not been redacted:  the letter informs the local law enforcement agency

that "a special agent from the FBI Field Office in Miami, Florida" reported the leak.  In addition,

only some of the information provided by the source has been redacted, strongly suggesting that

the redactions are designed to protect some other facet of the communication, not necessarily the

confidential source or his contributions.  Nor is there any indication in the letter or the

declarations submitted by Mr. Hardy that the original and apparently undisclosed source of the

information asked for, received, or would assume he had a promise of confidentiality in the

circumstances presented here.[10]  Defendant has not justified the nondisclosure of these five

documents under Exemption 7(D).

Finally, defendant asserts that Document No. 33 does not have to be produced

because the printouts were provided by a confidential source in the course of a criminal

investigation.  In reply, defendant provided the letter that accompanied the printouts (Dkt. # 43,

Ex. 8).  There is no indication that the author requested confidentiality or believed that his

communication would be maintained in confidence.  Nor do the circumstances surrounding the

communication suggest that the complaining officer would not have shared the information

absent a promise of confidentiality:  the complainant was employed by a different law

enforcement agency and leveled a number of complaints against the police chief.

**H. EXEMPTION 7(E)**

Exemption 7(E) authorizes the redaction of information compiled for law

enforcement purposes that would "disclose techniques and procedures for law enforcement

---

[10]  In reply, defendant argues that because the source of the information is a law enforcement officer or agency connected with the alleged wrongdoer, the source would be reluctant to report the leak in the absence of an implied promise of confidentiality.  Again, this argument is not based on the documents at issue.  Document No. 117, for example, identifies an insurance investigator as the source of relevant information, not a local law enforcement agency.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -12-

investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  As argued by the parties, the key consideration is whether disclosure of the requested document creates a "risk of circumvention" of the law.  The FBI has withheld eight types of documents pursuant to Exemption 7(E), each of which is discussed below using one or more documents as examples.

      1.  Operating Procedures  (Document Nos. 15, 16, and 17)

        The FBI has withheld documents reflecting its policies, procedures, techniques, and strategies pertaining to the watchlisting process.  Plaintiff contests the agency's apparent assumption that the disclosure of any part of the 103 pages that refer or relate to the VGTOF would allow investigative targets to avoid detection or develop countermeasures to watchlisting.  Mr. Hardy carefully states that the "complete revelation" of the SOPs "in its entirety" would increase the risks of circumvention.  Decl. of David M. Hardy (Dkt. # 39) at 20.  There is no indication, however, that every policy or protocol in the document reveals information that could be utilized to avoid detection or develop countermeasures.  The logical inference arising from the nature of SOPs and Mr. Hardy's careful choice of language is that entire sections of the document can likely be disclosed without any real risk to the watchlisting process.[11]

      2.  Form FD-930  (Document No. 20)

        According to Mr. Hardy, Form FD-930 is used to supply information for entry into VGTOF.  The form relies on a specific set of identifiers, such as name, date of birth, and/or passport number, to identify individuals.  Mr. Hardy asserts that "releasing a comprehensive list of all identifiers which the US Government can collect, store, and use to track a terrorist" could

---

[11]  The Court reserves judgment on plaintiff's "secret law" argument.  Mr. Hardy has not described the SOPs in enough detail for the Court to determine whether they establish a standard of conduct below which members of the populace cannot fall without risking inclusion in the VGTOF and heightened scrutiny in many aspects of daily living.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -13-

allow terrorists to "learn what types of information to falsify, obscure, or hide in order to remain undetected." Decl. of David M. Hardy (Dkt. # 39) at 22. While the argument sounds promising, plaintiff has provided a publicly-available document that purports to identify the types of data included in twelve watchlists maintained by the federal government, including the VGTOF. Decl. of Shana Khader (Dkt. # 40) at 23.[12] In reply, the FBI argues that, even if a comprehensive list of identifiers were disclosed in the past, the list may have been altered in ways that have not yet been made public. Reply (Dkt. # 43) at 4-5.

Despite having all relevant information at its disposal, the FBI does not state that the identifiers utilized in Form FD-930 have changed since they were publicly disclosed in 2003. Even if that were the case, the fact that the list of identifiers was disclosed in the past suggests that its public availability did not present a risk of circumvention of agency regulation. Because the agency's claimed justification for nondisclosure is controverted by contrary evidence in the record, the FBI has failed to establish that this group of documents was properly withheld under Exemption 7(E).

3. Specific Non-Public Databases and/or Systems  (Document No. 110)

The FBI has withheld documents that identify where particular sorts of data are recorded within the agency's databases and/or systems. Decl. of David M. Hardy (Dkt. # 39) at 22. Neither the data structures nor the type of information stored therein is identified, and Mr. Hardy makes no effort to explain how disclosure of a system's architecture (i.e., where certain pieces of information are stored in relation to others) could allow persons to circumvent the VGTOF.

Mr. Hardy asserts that publication of "secret information about national security and terrorism investigations," including "what types of information are needed to authorize

---

[12] In addition, Document No. 67 instructs FBI Field Offices to provide an FD-930 with any request for entry in the VGTOF and specifically identifies a number of personal identifiers required for such entry.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -14-

particular investigative techniques," could enable terrorists to cover their tracks.  Decl. of David M. Hardy (Dkt. # 39) at 22-23.  It is not clear how these concerns relate to this category of documents.  Mr. Hardy's description of the material withheld – information that identifies where data is recorded – does not suggest that disclosure of investigative techniques is even a possibility.  If, as may be the case, Mr. Hardy's description of the documents does not accurately summarize the nature of the information withheld in this category, a revised <u>Vaughn</u> index is necessary.  On the other hand, if the materials simply reveal the location of information within the FBI's databases and systems, the agency has not justified its nondisclosure.

4.  Procedure Used to Prevent Disclosure to Watchlisted Individuals  (Document No. 113)

For purposes of its initial production, the FBI withheld many documents referencing "a specific procedure used to prevent an individual from determining whether he or she is a known or suspected terrorist as identified on the watchlist . . . ."  Decl. of David M. Hardy (Dkt. # 39) at 23.[13]  When plaintiff pointed out that the agency had already disclosed the name and certain operational details of the "silent hits" procedure, the FBI reevaluated its claimed exemption for this category of documents.  Mr. Hardy states that certain documents that contain the term "silent hits" have now been produced, but the agency continues to withhold documents in which the term is connected to a specific individual or specific details regarding law enforcement procedures or techniques.

It appears that Mr. Hardy's parameters for reevaluating the "silent hit" documents were too strict.  It is not enough to disclose the term "silent hits" where it was previously redacted.  Plaintiff has shown that certain operational details of the procedure, the protocol for selecting a subject, the four sub-groups indicating level of interest, and the corresponding warning statements for law enforcement officers have all been publicly disclosed.  Defendant

---

[13]  Certain references to the procedure slipped through the FBI's initial screening process.  <u>See</u> Document No. 67 at 2.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -15-

apparently recognizes that plaintiff is entitled to all iterations and versions of publicly-available material and yet continues to withhold the same information in documents such as Document No. 113.  No explanation or justification is given.  While plaintiff does not object to the withholding of information that would identify the specific individuals who are subject to the "silent hits" procedure, it is entitled to the release of the types of information that have already been disclosed to the public.

     5.  VGTOF Nomination Criteria (Document No. 127)

        The FBI initially contended that disclosure of the criteria considered for nomination to the VGTOF would allow terrorists to adjust their tactics to avoid entry in the VGTOF.  After its reevaluation of the withheld documents, however, the FBI released the criteria for entry contained in Document No. 127.  The evidence in the record therefore suggests that disclosure of the nomination criteria will not, in fact, pose an unacceptable risk that persons or entities will be able to use the information to circumvent VGTOF entry or agency regulation.

     6.  VGTOF Field Codes  (Document No. 92)

        Mr. Hardy describes the VGTOF Field Codes by their function:  they apparently "permit entry and retrieval of records by group and subgroup name and/or numeric identifiers." Decl. of David M. Hardy (Dkt. # 39) at 23.  Mr. Hardy asserts that disclosure of these codes would allow a target to "change its tactics, frustrate an existing VGTOF entry, compromise an investigation, and possibly increase its chances of circumventing the law."  Decl. of David M. Hardy (Dkt. # 39) at 24.  Even if it were plausible that the release of coding information could have the negative repercussions posited by Mr. Hardy, the codes for the sub-groups and the corresponding warning statements for law enforcement officers have already been publicly disclosed.  The FBI offers no justification for the nondisclosure in response to plaintiff's FOIA request.

     7.  Guidelines for Encounters with Watchlisted Individuals  (Document No. 115)

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -16-

As discussed above, the instructions provided to law enforcement officers regarding encounters with watchlisted persons have been publicly disclosed.   Defendant has made this information available through NCIC-VGTOF-6894-6896 (Decl. of Farrin R. Anello (Dkt. # 40), Ex. G) and the new version of Document No. 112, but continues to withhold the same information in documents such as Document Nos. 113 and 115.  No explanation or justification is given.  The agency has not met its burden.

        8.  Terrorist-Related Trend Information (Document No. 39)

The FBI has declined to produce statistical reports regarding terrorist-related trend information.  Mr. Hardy states that disclosure of hits and travel patterns by geographic area "could serve to warn suspected terrorists that the FBI is aware of their plans and they could then take countermeasures against law enforcement, including changing target cities and locations." Decl. of David M. Hardy (Dkt. # 39) at 25.  Because the "justifications for nondisclosure are not controverted by contrary evidence in the record or by evidence of [agency] bad faith,"the Court accords Mr. Hardy's declaration substantial deference.  Minier, 88 F.3d at 800.  No further production or supplementation of the Vaughn index is required regarding these documents.[14] Because the FBI's evidence regarding risk of circumvention was the dispositive factor in the Court's Exemption 2 rulings, those rulings apply equally to defendant's Exemption 7(E) claims.

**I. PRODUCTION OF "REASONABLY SEGREGABLE PORTIONS" OF THE RECORD**

There is no reason to assume or suspect that defendant has failed to disclose all reasonably segregable portions of a record after deleting exempt information.  5 U.S.C. § 552(b).

---

[14]  Mr. Hardy's declaration focuses on the dangers of disclosing travel patterns and regional data. Based on the description of the withheld documents and the highlighted risks, the Court has assumed that the nondisclosure extends only to these types of statistics and that other types of statistical information regarding the VGTOF have not been categorically withheld.  If this assumption is incorrect, the FBI shall supplement its Vaughn index so that it clearly identifies other types of statistical reports that have been withheld and justifies each nondisclosure.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT      -17-

**J. DUPLICATION COSTS**

The Court finds that plaintiff is not required to pay duplication costs associated with its December 19, 2008, FOIA request above the $100 that has already been tendered. This determination is based on the following statutory provisions and factual determinations:

- Pursuant to 5 U.S.C. § 552(a)(4)(A)(viii), an agency shall not assess search or duplication fees against a representative of the news media if the agency has failed to comply with FOIA's time limits. For purposes of this statute, a representative of the news media "means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii). Plaintiff qualifies as a representative of the news media under this definition. See http://www.aclu-wa.org/.

- Pursuant to FOIA § 552(a)(6)(C), a person making a request for records is deemed to have exhausted his administrative remedies with respect to any such request if the agency fails to act in a timely manner. As discussed in this Court's "Order Denying Defendant's Motion for Open America Stay" (Dkt. # 27), the FBI did not seek an administrative extension of time in which to produce documents and did not justify its request for an indefinite extension. Nor did the FBI respond to plaintiff's request for a fee waiver in a timely manner.

- The Court finds that disclosure of the information sought by plaintiff is in the public interest in that it is "likely to contribute significantly to public understanding of the operations or activities of the government . . . ." 5 U.S.C. § 552(a)(4)(A)(iii).

**CONCLUSION**

The attempt to prove and disprove the applicability of FOIA exemptions through a sample of heavily redacted or withheld documents is fraught with danger. Plaintiff and the Court are deprived of most meaningful pieces of information, while defendant is tasked with generating summaries of documents and justifications for their nondisclosure that are neither too

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -18-

general nor too specific.  The Court is left to parse declarations, summaries, and redacted documents to determine whether defendant said the right thing and whether there is any evidence in the record that contradicts those statements.

In this case, the Court concludes that defendant interpreted a number of claimed exemptions too broadly and/or failed to provide facts that would justify the claimed exemption. Where there is a reasonable basis to believe that the failure to justify nondisclosure may not necessarily mean that the failure to disclose is unjustified, the Court has opted to require a supplemental <u>Vaughn</u> index and *in camera* production of the documents in an effort to resolve the ambiguities.  Where, however, it appears that the claimed exemption simply does not reach the documents at issue, production is appropriate.

For all of the foregoing reasons, it is hereby ORDERED that:

1.  Defendant's motion for summary judgment regarding the adequacy of its search and the production of reasonably segregable portions of the record is GRANTED.

2.  Defendant shall, within thirty days of the date of this Order, revise its "Summary and Justification of Deleted Information" for Document Nos. 79, 80, 81, 84, 100, and 124.  It is highly recommended that a summary and justification be written specifically for each document, rather than relying on descriptions and generalizations that are so broad that they can be applied to whole categories of documents.  The revised <u>Vaughn</u> index must impart real information regarding the content of each document at issue and why the release of that information reasonably could be expected to damage national security.  Where the Vaughn index consists of a partial document, such as Document No. 80, defendant shall supplement the index by substituting the complete communication, memorandum, or document in place of the partial document.

3.  Defendant's motion for summary judgment regarding the redactions to Document No. 66 is GRANTED.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -19-

4. Defendant's motion for summary judgment regarding the redactions to Document Nos. 19, 25, 29, 30, 43, and 75 under Exemption 5 is GRANTED.

5. Defendant's motion for summary judgment regarding redactions under Exemption 6 is GRANTED.

6. Defendant shall, within twenty-one days of the date of this Order, remove redactions asserted under Exemption 7(C) related to descriptors that apply to whole populations, such as race, sex, country of birth, and passport country, and produce the documents to plaintiff.

7. Defendant shall, within thirty days of the date of this Order, revise its "Summary and Justification of Deleted Information" for Document No. 27 if it intends to pursue its recent claims under Exemptions 5 and 7(E), following the recommendations discussed in ¶ 2 above. If defendant does not intend to pursue the Exemption 5 and 7(E) arguments, it shall, within twenty-one days of the date of this Order, remove the redactions to Document No. 27 asserted under Exemption 7(D) and produce the document to plaintiff.

8. Defendant shall, within twenty-one days of the date of this Order, remove redactions to Document Nos. 33 and 116-120 asserted under Exemption 7(D) and produce the documents to plaintiff.

9. Defendant shall, within thirty days of the date of this Order, revise its "Summary and Justification of Deleted Information" for operating procedures withheld or redacted under Exemptions 2 and 7(E), following the recommendations discussed in ¶ 2 above.

10. Defendant shall, within twenty-one days of the date of this Order, remove redactions asserted under Exemptions 2 and 7(E) to Form FD-930 and related documents and produce the documents to plaintiff.

11. Defendant has not shown that information regarding specific non-public databases and/or systems was properly withheld. If, as may be the case, the existing Vaughn index does not accurately summarize the nature of the information withheld in this category, defendant

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT        -20-

shall, within thirty days of the date of this Order, revise the relevant "Summaries and Justifications of Deleted Information" following the recommendations discussed in ¶ 2 above. If, however, the documents in this category simply identify where particular sorts of data are recorded within the agency's databases and/or systems, defendant shall, within twenty-one days of the date of this Order, remove redactions asserted under Exemptions 2 and 7(E) to non-public databases and/or systems documents and produce the documents to plaintiff.

12.  Defendant shall, within twenty-one days of the date of this Order, remove redactions asserted under Exemptions 2 and 7(E) related to information regarding the "silent hits" procedure that has already been disclosed to the public, including any documents related to the basic operational details of the procedure, the protocol for selecting a subject, the sub-groups indicating level of interest, and the corresponding guidelines to law enforcement officers encountering watchlisted individuals, and produce the documents to plaintiff.

13.  Defendant shall, within twenty-one days of the date of this Order, remove redactions asserted under Exemptions 2 and 7(E) related to VGTOF nomination criteria, VGTOF field codes, and the guidelines for encounters with watchlisted individuals, and produce the documents to plaintiff.

14.  Defendant's motion for summary judgment regarding the redactions to documents disclosing terrorist-related trend information is GRANTED, provided that the redactions in this category extend only to statistics that would disclose travel patterns and regional data.  If other types of statistical information regarding the VGTOF have been categorically withheld, defendant shall, within thirty days of the date of this Order, revise its "Summary and Justification of Deleted Information" for terrorist-related trend information withheld or redacted under Exemptions 2 and 7(E), following the recommendations discussed in ¶ 2 above.

15.  Plaintiff is not required to pay duplication costs associated with its December 19, 2008, FOIA request above the $100 that has already been tendered.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                -21-

16.  Defendant shall produce the documents discussed in paragraphs 2, 7 (if a revised Vaughn index is generated), 9, 11 (if a revised Vaughn index is generated), and 14 (if a revised Vaughn index is generated) for *in camera* review, along with Mr. Hardy or another knowledgeable person who can explain the documents and their import.  Chambers staff will contact defense counsel to schedule a time for production.

        If the parties are able to resolve this litigation following supplementation of the Vaughn index, they shall notify the Deputy Clerk, Kerry Simonds, at 206-370-8519 in a timely manner.  If the parties are unable to resolve their dispute, plaintiff may, within thirty days of production of the revised Vaughn index, file a supplemental memorandum to assist the Court during the *in camera* review.

        Dated this 10th day of March, 2011.

                              *MWS Lasnik*
                              Robert S. Lasnik
                              United States District Judge

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -22-